RECNC'260413AM0833MDG7-ATH

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### ATHENS DIVISION

| | | |
|---|---|---|
| **Francisco Forrest Martin,** <br> *Plaintiff pro se* | ) <br> ) <br> ) | |
| *vs.* | ) <br> ) <br> ) | **Case No. _____** |
| **Board of Regents of the University System of Georgia,** <br> *Defendants in their official capacity;* | ) <br> ) <br> ) <br> ) | **Demand for Jury Trial** |
| **Jere W. Morehead,** <br> *Defendant in their official and/or individual capacities;* | ) <br> ) <br> ) <br> ) | **Civil Rights Complaint** |
| **Benjamin C. Ayers,** <br> *Defendant in their official and/or individual capacities;* | ) <br> ) <br> ) <br> ) | |
| **S. Jack Hu,** <br> *Defendant in their official and/or individual capacities;* | ) <br> ) <br> ) <br> ) | |
| **Elizabeth Weeks,** <br> *Defendant in their official and/or individual capacities;* | ) <br> ) <br> ) <br> ) | |
| **Bob Taylor,** <br> *Defendant in their official and/or individual capacities;* | ) <br> ) <br> ) <br> ) | |
| **Usha Rodrigues,** <br> *Defendant in their official and/or individual capacities;* | ) <br> ) <br> ) | |

**Peter Rutledge,**
*Defendant in their official and/or individual capacities,*

**Christopher Bruner,**
*Defendant in their official and/or individual capacities;*

**Thomas Kadri,**
*Defendant in their official and/or individual capacities;*

**Adam Orford,**
*Defendant in their official and/or individual capacities;*

**Elizabeth Burch,**
*Defendant in their official and/or individual capacities;*

**John Beck,**
*Defendant in their official and/or individual capacities;*

**Lisa Milot,**
*Defendant in their official and/or individual capacities;*

**Joseph Miller,**
*Defendant in their official and/or individual capacities;*

**Dan Coenen,**
*Defendant in their official and/or individual capacities,*

**Diane Marie Amann,**
*Defendant in their official and/or individual capacities,*

**John Meixner,**
*Defendant in their official and/or*
*individual capacities, and*

**David Shipley,**
*Defendant in their official and/or*
*individual capacities.*

)
)
)
)
)
)
)
)
)

## COMPLAINT

## SUMMARY

1.    Francisco Forrest Martin (hereinafter Plaintiff Martin) hereby submits this certified Complaint (with attached Exhibits) against the Defendants pursuant to, respectively, 42 U.S.C. § 1983 (hereinafter Section 1983), Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e *et seq.* (hereinafter Title VII), and the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 *et seq.* (hereinafter ADEA) for their following respective acts:

(i) refusing to interview and/or hire him for a faculty position at the University of Georgia School of Law (hereinafter Law School) on the bases of national origin, age, and/or national origin plus age in respective violations of U.S. Const. amend. XIV's Equal Protection Clause, Title VII, and the ADEA;

(ii) repeatedly retaliating against him because he filed discrimination and retaliation Charges with the Equal Employment Opportunity Commission (hereinafter EEOC) and participated in the EEOC investigations of his

Charges, by continuing to refuse to interview and/or hire him, withholding copies of records requested by him pursuant to the Georgia Open Records Act (hereinafter GORA), amending a University of Georgia (hereinafter UGA) recruitment policy that had given explicit preference to young candidates in an attempt to conceal the policy's age discriminatory purpose, and

(iii) committing retaliatory and chilling acts against him because he communicated with and petitioned the EEOC and the Defendants for redress of grievances against the Defendants, by withholding copies of records requested by him pursuant to the GORA pertaining to his grievances against the Defendants and by amending a University of Georgia (hereinafter UGA) recruitment policy that had given explicit preference to young candidates in an attempt to conceal the policy's age discriminatory purpose, in violation of U.S. Const. amend. XIV's Due Process Clause guaranteeing rights to freedom of speech and petition for redress of grievances.

2.    Plaintiff Martin demands trial by jury.

3.    Plaintiff Martin is a 65-year-old of Hispanic national origin (specifically, a Dominican-American) and the former Ariel F. Sallows Professor of Human Rights at the University of Saskatchewan College of Law. He is a visiting professor at St. Thomas University School of Law in its summer program.

4.     Instead of interviewing and hiring Plaintiff Martin for a faculty position at the Law School, the Defendants interviewed and/or hired other similarly situated candidates (hereinafter Comparators) in the teaching and scholarship areas of international law, criminal law, and/or criminal procedure who were considerably less qualified than Plaintiff Martin, non-Hispanic, under 40-years-old and/or "substantially younger"[1] than Plaintiff Martin, and/or Hispanic and under 40-years-old and/or substantially younger than Plaintiff Martin.

5.     The Law School implemented a written, explicit University of Georgia (hereinafter UGA) policy that gave preferential treatment in faculty recruitment and hiring to "young" candidates including the candidates interviewed and/or hired by the Law School for the faculty positions for which Plaintiff Martin applied.

6.     The Board of Regents of the University System of Georgia (hereinafter Defendant Board) and UGA Law School in their EEOC Position Statements and

---

[1] The U.S. Supreme Court in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996), rejected the argument that an ADEA plaintiff must show that the age comparator was another person under 40-years-old. Under *O'Connor*, the question is whether the employer relied on age in making the challenged decision, not on whether the employer chose someone outside the protected class. The Court added, however, that an inference of age discrimination "cannot be drawn from the replacement of one worker with another insignificantly younger." 517 U.S. at 313. "Substantially younger" has been interpreted by the federal courts in ADEA cases to mean 3, 4, 5, or 7 years younger than the plaintiff. *Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1299 (11th Cir. 2015) (listing cases).

responses to questions from the EEOC repeatedly proffered explanations for not interviewing and hiring Plaintiff Martin that were irrefutably factually false.

## PARTIES

*Plaintiff*

7.     **Plaintiff Francisco Forrest Martin** is a citizen of the United States and the State of Florida. He is 65-years-old and applied for a faculty position at the Law School when he was 63-years-old. Therefore, he is a member of a protected class under the ADEA. Plaintiff Martin also is of Hispanic national origin and is a member of a class protected by U.S. Const. Amend. XIV (equal protection-national origin) and Title VII (national origin). He resides in Hillsborough County, Florida.

*Defendants*

8.     **Defendant Board of Regents of the University System of Georgia** is a Georgia State agency responsible for governing, controlling, and managing UGA (including its Law School) and for final approval of candidates recommended by the Law School faculty for positions of full professor. Defendant Board employs and supervises more than 500 persons, including the following Defendants.[2] Defendant Board was subject to EEOC requests for Position Statements and information that

---

[2] Exhibit No. 1: University System of Georgia, Research and Policy Analysis Operations Division, Employee Reports, https://www.usg.edu/research/assets/research/documents/faculty/HRDMX0108_fal l2023.pdf (visited 18 Feb. 2025).

were material to the investigation of Plaintiff Martin's EEOC Charges and claims. Plaintiff Martin is suing Defendant Board pursuant to Title VII and the ADEA for damages, and declaratory and injunctive relief as well as attorney fees and costs.

9.    **Defendant Jere W. Morehead** (hereinafter Defendant Morehead) is President of UGA responsible for final approval of candidates recommended by the Law School faculty for positions of assistant and associate professor. He was and is custodian in control of records subject to the GORA that were material to the investigation of Plaintiff Martin's EEOC Charges and claims, and was subject to EEOC requests for information during EEOC investigations in Plaintiff Martin's Charges. Defendant Morehead is sued in his official and/or individual capacities pursuant to Section 1983 for declaratory, injunctive, and monetary damages relief as well as attorney fees and costs.

10.    **Defendant Benjamin C. Ayers** (hereinafter Defendant Ayers) is Provost and Senior Vice President for Academic Affairs of UGA as of June 30, 2025 responsible for consideration of applicants recommended by the Law School faculty for positions of assistant and associate professor. He was and is custodian in control of records subject to the GORA that were material to the investigation of Plaintiff Martin's EEOC Charges and claims, and was subject to EEOC requests for information during EEOC investigations in Plaintiff Martin's Charges. Defendant Ayers is sued in his individual and/or official capacities pursuant to Section 1983 for

declaratory, injunctive, and monetary damages relief as well as attorney fees and costs.

11. **Defendant S. Jack Hu** (hereinafter Defendant Hu) was Provost and Senior Vice President for Academic Affairs of UGA from July 2019 through June 2025 for responsible for consideration of applicants recommended by the Law School faculty for positions of assistant and associate professor. He was custodian in control of records subject to the GORA that were material to the investigation of Plaintiff Martin's EEOC Charges and claims, and was subject to EEOC requests for information during EEOC investigations in Plaintiff Martin's Charges and claims. Defendant Hu is sued in his individual and/or official capacities pursuant to Section 1983 for declaratory, injunctive, and monetary damages relief as well as attorney fees and costs.

12. **Defendant Elizabeth Weeks** (hereinafter Defendant Weeks) is UGA's Vice Provost for Academic Affairs (since June 2025) and previously served as Associate Provost for Faculty Affairs (since 2020). In her present and previous positions, she was and is responsible for directing UGA's Office of Faculty Affairs. She was supervised by Defendant Hu and presently supervised by Defendant Ayers. She was and is custodian in control of records subject to the GORA that were material to the investigation of Plaintiff Martin's EEOC Charges and claims, and was subject to EEOC requests for information during EEOC investigations in Plaintiff Martin's

Charges and claims. Defendant Weeks is sued in her individual and/or official capacities pursuant to Section 1983 for declaratory, injunctive, and monetary damages relief as well as attorney fees and costs.

13. **Defendant Bob Taylor** (hereinafter Defendant Taylor) is the UGA's Open Records Manager. He was responsible for fulfilling requests for copies of records made pursuant to the GORA by Plaintiff Martin. In his capacity as Manager, he was responsible for forwarding such requests to the appropriate record custodians (including the Defendants) at the UGA and collecting copies of such requested records for forwarding to Plaintiff Martin. He was and is custodian in control of records subject to the GORA that were material to the investigation of Plaintiff Martin's EEOC Charges and claims, and was subject to EEOC requests for information during EEOC investigations in Plaintiff Martin's Charges. Plaintiff Martin is suing Defendant Taylor in his individual and/or official capacities pursuant to Section 1983 for declaratory, injunctive, and monetary damages relief as well as attorney fees and costs.

14. **Defendant Usha Rodrigues** is the present Dean of the Law School (as of Jan. 1, 2025) and is responsible for the review of candidates elected for recommendation for law school faculty appointment by eligible voting members of the faculty, for the review of any recommendations made by the Law School's Search and Screening Committee, and for forwarding such recommendations to UGA's President (via the

UGA Provost) for their final approval for assistant and associate professorship appointments and to Defendant Board for its final approvement of full professorship appointments. Defendant Rodrigues did make faculty appointment offers on behalf of the Law School. She was and is custodian in control of records subject to the GORA that were material to the investigation of Plaintiff Martin's EEOC Charges and claims, and was subject to EEOC requests for information during EEOC investigations in Plaintiff Martin's Charges. Plaintiff Martin is suing Defendant Rodrigues in her individual and/or official capacities pursuant to Section 1983 for declaratory, injunctive, and monetary damages relief as well as attorney fees and costs.

15.    **Defendant Peter Rutledge** was the Dean of the Law School from 2015 through 2024 and was responsible for the review of candidates elected for recommendation for law school faculty appointment by eligible voting members of the faculty, for the review of any recommendations made by the search and screening committee, and for forwarding such recommendations to UGA's President (via the UGA Provost) for their final approval for assistant and associate professorship appointments and to Defendant Board for its final approvement of full professorship appointments. Defendant Rutledge did make faculty appointment offers on behalf of the Law School. He was and is custodian in control of records subject to the GORA that were material to the investigation of Plaintiff Martin's EEOC Charges and

claims, and was subject to EEOC requests for information during EEOC investigations in Plaintiff Martin's Charges. Plaintiff Martin is suing Defendant Rutledge in his individual and/or official capacities pursuant to Section 1983 for declaratory, injunctive, and monetary damages relief as well as attorney fees and costs.

16. The following Defendants were members of the Law School's Search and Screening Faculty Appointments Committee (2023-2024) (hereinafter Defendants 2023-2024 Search Committee Members)[3] responsible for screening, selecting candidates for interview offers, interviewing, and selecting applicants for consideration by the Law School faculty for appointment recommendations:

**Usha Rodrigues (Chair),**
**Peter Rutledge,**
**Christopher Bruner,**
**Thomas Kadri,**
**Adam Orford,**
**Elizabeth Burch,**
**John Beck,**
**Lisa Milot,**
**and Joseph Miller.**

17. They were and/or are custodians in control of records subject to the GORA that were material to the investigation of Plaintiff Martin's EEOC Charges and claims, and were subject to EEOC requests for information during EEOC

---

[3] Exhibit No. 20: UGAJobs No. F1697P job posting (July 14, 2023).

investigations in Plaintiff Martin's Charges. Plaintiff Martin is suing Defendants 2023-2024 Search Committee Members in their individual and/or official capacities pursuant to Section 1983 for declaratory, injunctive, and monetary damages relief as well as attorney fees and costs.

18.  The following Defendants were members of the Law School's Faculty Search and Screening Faculty Appointments Committee (2024-2025) (hereinafter Defendants 2024-2025 Search Committee Members)[4] responsible for screening, selecting candidates for interview offers, interviewing, and selecting applicants for consideration by the Law School faculty for appointment recommendations:

**Usha Rodrigues (Chair),
Peter Rutledge,
Christopher Bruner,
Dan Coenen,
John Meixner,
Diane Marie Amann,
and David Shipley**

19.  They were and/or are custodians in control of records subject to the GORA that were material to the investigation of Plaintiff Martin's EEOC Charges and claims, and were subject to EEOC requests for information during EEOC investigations in Plaintiff Martin's Charges. Plaintiff Martin is suing Defendants 2024-2025 Search Committee Members in their individual and/or official capacities

---

[4] Exhibit No. 66: UGAJobs No. F2044P job posting (July 24, 2024).

pursuant to Section 1983 for declaratory, injunctive, and monetary damages relief as well as attorney fees and costs.

20.    All Defendants had knowledge of all or some of the facts surrounding the offers of interviews and appointments at the Law School and Plaintiff Martin's GORA requests.

21.    All Defendants provided information to UGA Law School and Defendant Board in response to the EEOC's requests for Position Statements and for additional information from UGA Law School and Defendant Board.

22.    All Defendants are acting or have acted under color of the State of Georgia's statutes, ordinances, regulations, custom, and/ or usage in violating Plaintiff Martin's rights guaranteed by the U.S. Const. amend. XIV, Title VII, and/or the ADEA.

## SUBJECT MATTER JURISDICTION

23.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and has original jurisdiction under 28 U.S.C. § 1343 (civil rights) on the respective bases that Plaintiff Martin's claims arise under the Equal Protection Clause of the Fourteenth Amendment; Title VII; and the ADEA. This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57. The federal rights asserted by Plaintiffs are enforceable under Section 1983, Title VII, and the ADEA.

**PERSONAL JURISDICTION**

24.     This Court has personal jurisdiction over all parties on the bases that (i) Plaintiff Martin's claims arose and/or continue to arise from the Defendants' acts and/or omissions that took and/or continue to take place in the State of Georgia and (ii) the Defendants (except Defendants Milot, Amann, Hu, and Orford) reside and conduct business in the State of Georgia.

**EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES**

25.     On Aug. 27, 2024, Plaintiff Martin filed a Charge (No. 410-2024-10828) with the EEOC against the Law School for its ongoing discriminatory conduct on the bases of national origin and age.[5] The EEOC issued a Notice of Right to Sue Letter to Plaintiff Martin on Feb. 12, 2026.[6]

26.     On Jan. 22, 2025, Plaintiff Martin filed a Charge (No. 410-2025-04488) with the EEOC against Defendant Board for its ongoing discriminatory conduct on the bases of national origin and age. The EEOC issued a Notice of Right to Sue Letter to Plaintiff Martin on Feb. 12, 2026.[7]

27.     On July 10, 2025, Plaintiff Martin filed a Charge (No. 410-2025-11553) with the EEOC against Defendant Board for its ongoing retaliation against Plaintiff

---

[5] Exhibit No. 2: EEOC Charge of Discrimination, No. 410-2024-10828 (*Francisco Forrest Martin v. UGA School of Law*) (Aug. 27, 2024).

[6] Exhibit No. 3: EEOC Notices of Right to Sue (Feb. 12, 2026).

[7] Exhibit No. 3: EEOC Notices of Right to Sue (Feb. 12, 2026).

Martin for filing his earlier Charges of employment discrimination in hiring. The EEOC issued a Notice of Right to Sue Letter to Plaintiff Martin on Feb. 12, 2026.[8]

28.     More than 60 days have elapsed since Plaintiff Martin filed his Charges of age discrimination with the EEOC regarding the Defendant Board's alleged discriminatory conduct.

29.     Plaintiff Martin has exhausted his federal administrative remedies.

## STATUTE OF LIMITATIONS

30.     The EEOC issued its Notices of Right to Sue to Plaintiff Martin on Feb. 12, 2026,[9] and Plaintiff Martin has filed this Complaint within 90 days of receiving such Notices.

31.     Plaintiff Martin's Section 1983 claims are governed by Georgia State's two-year limitations period (Ga. Code Ann. § 9-3-33). The Defendants' violations of Plaintiff Martin U.S. Const. amend. XIV claims respectively occurred within Georgia's two-year limitations periods and/or are ongoing and/or continuing.

32.     Plaintiff Martin has timely filed this Complaint.

---

[8] Exhibit No. 3: EEOC Notices of Right to Sue (Feb. 12, 2026).
[9] Exhibit No. 3: EEOC Notices of Right to Sue (Feb. 12, 2026).

## VENUE

33.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) on the basis that

a substantial part of the events or omissions giving rise to the claim occurred in the

Middle District of Georgia.

## FACTS

***Background: Defendants' policies, procedures, and/or practices addressing faculty hiring***

34.    Defendant Board's and UGA's policies require that only certain criteria and

procedures can be used in the faculty appointment hiring process.

35.    Defendant Board's *Policy Manual* states in relevant part: "An employment

application shall be completed by each person formally applying for a faculty

position in a University System of Georgia institution."[10]

36.    Defendant Board's Response to EEOC Charge No. 410-2025-04488 Request

for Information stated the following:

   a. All applicants to University of Georgia faculty positions, including
      faculty positions within the School of Law, must go through
      UGAJobs, the applicant tracking system currently in use by the
      University of Georgia. While other advertising sources such as
      specialized job boards, listservs, and personal referrals for the
      respective posting may be utilized to broaden the reach of recruiting

---

[10] Exhibit No. 4: University System of Georgia, *Board of Regents Policy Manual: Official Policies of the University System of Georgia*, sec. 8.3.10 Faculty Employment Applications, Board of Regents Policy Manual, Official Policies of the University System of Georgia. University System of Georgia website (visited 9 Feb. 2025).

efforts, the obligation for an applicant to apply via UGAJob for official consideration always remains.

b. Any individual who successfully completes an application in UGAJobs for a particular position is considered an applicant for the position. All applicants while the posting is open and accepting applications will have their materials reviewed by the respective search committee members.

c. Because all applications must be routed through the UGAJobs applicant tracking system to be officially considered, there is no ability to solicit or accept applications for a faculty position outside of an active UGAJobs posting.

d. Applications are considered active until the respective position is filled and all requisite hires are completed. At that time, the posting is closed and removed from visibility on the web. Applicants from that pool are no longer under consideration for employment.

e. All applicants to University of Georgia faculty positions, including faculty positions within the School of Law, must go through UGAJobs, the applicant tracking system currently in use by the University of Georgia. While other advertising sources such as specialized job boards, listservs, and personal referrals for the respective posting may be utilized to broaden the reach of recruiting efforts, the obligation for applicants to apply via UGAJob always remains. Communication regarding both the receipt and processing of an application are also provided via UGAJobs. Upon successful completion of the application process, applicants are provided a system message that states "Thank you for your interest in this position. The screening and selection process is currently underway and will continue until a successful candidate is chosen. Should review of your qualifications result in a decision to pursue your candidacy, you will be contacted." If there are any issues with applicant's submission that interfere with their candidacy or if they do not meet the minimum qualifications of the position based on their responses to questions in the employment application, applicants are provided the following system message instead: "Thank you for your interest in this position. Based on your responses to the questions on the employment application, you do not meet the minimum

qualifications for this position. Please do not let this discourage you from applying for other positions that interest you."[11]

37.    The UGA Law School uses the Association of American Law School's Faculty Appointments Register (hereinafter FAR), which lists candidates interested in acquiring law faculty teaching appointments, for soliciting applicants for faculty appointments. [12]

38.    Applying for a faculty position requires that the applicant certify as to the truthfulness of their answers to several questions (relating to, *e.g.*, racial, Hispanic, disability, and veteran statuses) in the application form on UGA's online employment application portal (hereinafter UGAJobs).

39.    Defendants 2023-2024 Search Committee Members and Defendants 2024-2025 Search Committee Members were aware that candidates whom they offered interviews needed to apply through the UGAJobs portal.[13]

---

[11] Exhibit No. 67: EEOC Charge No. 410-2025-04488 Request for Information from Defendant Board (5/19/2025) and Defendant Board's Response (emphases added).

[12] Exhibit No. 83: Response to Charging Party's Negotiated Settlement Agreement: Charge No. 410-202504488 (*Francisco Forrest Martin v. Board of Regents of the University System of Georgia*) and Charge No. 410-2024-10828 (*Francisco Forrest Martin v. University of Georgia and University of Georgia School of Law*) (May 7, 2025).

[13] Exhibit No. 5: Lee-Ford Tritt Email (Feb. 20, 2024) (application through UGAJobs portal).

40.    UGA policy states the following: "The general rule is that all faculty . . . appointments require an advertised, open search of the required posting duration."[14]

41.    UGA policy defines an "applicant" as follows: "Any person who expresses written interest in a posted vacancy via the employer's published application process, meets the minimum qualifications; and, at no point in the selection process, removes themself from further consideration or otherwise indicates that they are no longer interested in the position."[15]

42.    The UGA Human Resources department distinguishes between "canceled searches" and "failed searches" -- "the 'failed search' and 'canceled search' dispositions [of job searches] are not interchangeable."[16] According to UGA Human Resources department, a faculty hiring unit is required to contact the UGA Equal

---

[14] Exhibit No. 6: University of Georgia, 1. Overview, Guidance: University of Georgia                    Direct                    Appointment, https://hr.uga.edu/Information_Directory/uga_direct_appointment_guidance/#:~:te xt=The%20general%20rule%20is%20that,exceptions%20to%20the%20general%2 0rule (visited 3/11/2025).

[15] Exhibit No. 7: University System of Georgia, *Human Resources Administrative Manual    Employment:    Employment    Applications*, https://www.usg.edu/hr/assets/hr/hrap_manual/HRAP_Employment_Applications. pdf (visited 3/11/2025).

[16] Exhibit No. 8: University of Georgia, UGAJobs Quick Guide: Taking Action on Applications    -    Action    Reason    Codes    Explained,    p.    5, https://hr.uga.edu/_resources/pdf/Guide-Taking-Action-on-Applications.pdf (visited 9 Feb. 2025).

Employment Office (EEO) if the unit believes that its faculty appointment search needs to be failed or canceled.[17]

43.    The *USG Board of Regents Policy Manual* states in relevant part:

2.6.3 Personnel Policies
The Board of Regents has the Constitutional authority for the government, control, and management of the University System of Georgia (USG) and all of its institutions, which includes the oversight of institutional hiring and search processes. [18]

44.    The *University of Georgia Statutes* state in relevant part:

[Art. VII, sec.2(4)]
The Dean shall recommend the appointment, reappointment, and promotion of members of the faculty of the school . . . .
[* * * *]

[Art. X, sec. 1]
Appointments

All appointments  . . . of members of the faculty shall be made by the President in accordance with Policies of the Board of Regents. Recommendations regarding faculty positions shall ordinarily originate with the department and shall be presented to the Dean of the school  . . . for consideration. Upon approval, the Dean will transmit recommendations to the Senior Vice President for Academic Affairs and Provost for consideration and transmission to the President for final approval prior to their initial appointment. Every recommendation of

---

[17] Exhibit No. 8: University of Georgia, UGAJobs Quick Guide:  Taking Action on Applications  -  Action  Reason  Codes  Explained,  p.  4, https://hr.uga.edu/_resources/pdf/Guide-Taking-Action-on-Applications.pdf (visited 9 Feb. 2025).

[18] Exhibit No. 4: University System of Georgia, *Board of Regents Policy Manual: Official  Policies  of  the  University  System  of  Georgia*, https://www.usg.edu/policymanual/section8/C245/#p8.3.5_evaluation_of_personn el (visited 9 Feb. 2025).

an appointment shall be made solely on the basis of merit and the special fitness of the individual for the work demanded by the position.[19]

45.    *The University of Georgia Guidelines for Appointment, Promotion, and Tenure of Academic Rank Faculty* state in relevant part:

I. INTRODUCTION TO THE GUIDELINES
[* * * *]
Voting faculty, committees, . . . and deans are to consider a candidate's qualifications against the criteria set out in these Guidelines and against discipline-specific criteria developed by the candidate's appointment unit, using only the procedures specified within these official documents.
[* * * *]
III. APPOINTMENT, PROMOTION AND TENURE
Criteria for appointment, promotion, and tenure at the University follow from the University's mission to teach, to inquire into the nature of things and to serve society. University of Georgia faculty must meet the following primary responsibilities: teaching; research, scholarship, or other creative activities; and service to society, the University, and the profession, including Student Success Activities, as appropriate. Academic appointment, promotion, and tenure are based upon a candidate's performance in these assigned areas.
[* * * *]
V. PROCEDURES FOR APPOINTMENTS
When filling a full-time faculty position, the . . . dean will appoint a search and screening committee. Members of the search and screening committee will perform their duties according to Affirmative Action Guidelines, University policy and discipline-specific criteria and procedures.
[* * * *]
Faculty members eligible to vote in the appointment unit shall vote by secret ballot to recommend candidates for full time, tenure-track

---

[19] Exhibit No. 9: University of Georgia, The University of Georgia Statutes, Policy Library University of Georgia, https://policy.uga.edu/university-statutes/ (visited 9 Feb. 2025) (emphasis added).

appointments in the unit. This vote will be reported to the faculty of the [School of Law], as well as to the . . . dean. [20]

46. In order for the Law School search and screening committee to recommend an applicant for appointment, the committee must interview the applicant.

47. UGA policy requires the "Search Committee Chair . . . to appropriately provide reasoning as to why candidates are removed from consideration or moved forward in the hiring process."[21]

48. Defendant Rutledge in his former capacity as Law School dean made the following charges to Defendants 2023-2024 Search Committee Members and Defendants 2024-2025 Search Committee Members:

> You must be able to objectively defend every decision for rejecting or retaining a candidate, and it bears emphasis that. at the end of this process, University policy will require an explanation for why each applicant was not chosen. Strict adherence to the parameters of the approved position description should make that process a straightforward one.[22]

---

[20] Exhibit No. 10: University of Georgia, *The University of Georgia Guidelines for Appointment, Promotion, and Tenure of Academic Rank Faculty Approved by the University Council April 2004 (Revised by the University Council Spring, 2006 Fall, 2007 Spring, 2010, 2011 Fall, 2011 Spring*, 2013, 2014, 2017, 2020 Fall 2022; Latest revisions take effect August 1, 2023), pp. 1, 2, 6-13, https://provost.uga.edu/wp-content/uploads/appointment-promotion-tenure-guidelines-academic-rank-faculty.pdf (visited Feb. 9, 2025) (emphases added).

[21] Exhibit No. 8: University of Georgia, UGAJobs Quick Guide: Taking Action on Applications - Action Reason Codes Explained, p. 1.

[22] Exhibit No. 11: GORA email request No. 25-279 (July 29, 2025); Exhibit No. 12: UGA Law School Dean Peter Rutledge Charge to Faculty Appointments Committees for Fall 2023 and Fall 2024.

49.   In the instant case, UGA law school did not provide any explanation(s) for retaining a candidate.

50.   In the instant case, UGA Law School's EEO Reports provided only six reasons for not offering interviews: (i) "[r]esearch impact not as strong of that of candidates selected for interview", (ii) "[p]ublication history not as strong as that of candidates selected for interview", (iii) "[t]eaching experience does not align with the department's needs", (iv) "[r]esearch interests are not aligned with or not compatible with those of the department", (v) "[e]xperience not as strong as that of candidates selected for interview", or (vi) "[e]ducation not as strong as that of candidates selected for interview".[23]

51.   In the instant case, UGA Law School's EEO Reports provided only four reasons for not offering faculty appointments: (i) "[i]nterview not as strong as that of candidate selected to receive offer", (ii) "[d]id not present favorably", (iii) "[r]esearch interests are not aligned with or not compatible with those of the department", and (iv) "[r]esearch impact not as strong as that of candidate selected to receive offer".[24]

---

[23] See, e.g., Exhibit No. 13: EEO Report for UGAJobs No. F1697P positions; Exhibit No. 14: EEO Report for UGAJobs No. F2044P positions.
[24] See, e.g., Exhibit No. 13: EEO Report for UGAJobs No. F1697P positions; Exhibit No. 14: EEO Report for UGAJobs No. F2044P positions.

52.   The Defendants (except Defendant Taylor) used the Google Scholar search engine[25] or other search engine(s) to comparatively measure the scholarly impacts and qualities of applicants' publications and research between law school faculty appointment candidates in their decisions for offering interviews and appointments.

53.   The practice of <u>verbally</u> offering persons outside UGa's employment competitive search process does not comply with UGA policy because letters of intent and contracts must be <u>written</u> or in an <u>electronic format</u>. As UGA policy states:

> Contracts binding on the University may only be signed by an individual delegated in writing the authority to sign such contract in compliance with this policy and Board of Regents policies. "Contract" means any contract, agreement, memorandum of understanding, memorandum of agreement, letter of intent, or <u>other written or electronic document</u>, or renewal of or amendment to such document that commits the funds, personnel, facilities, equipment, property, or other resources of the University.[26]

54.   Until May 2025, UGA policy governing faculty recruitment was the following:

---

[25] The Google Scholar search engine provides a listing of a scholar's academic publications and the number of citations to these publications, thereby providing a means of objectively measuring the impact of a scholar's publications and research, and the quality of scholarship.

[26] Exhibit No. 15: University of Georgia, *UGA Contract Approval and Execution Policy*, "III. Policy," https://policy.uga.edu/policies/#/programs/B1UKjFsVT?bc=true&bcCurrent=Contract%20Approval%20and%20Execution%20Policy&bcGroup=Legal%20Affairs%20&bcItemType=programs) (emphasis added) (visited 3/11/2025).

**Recruitment of Faculty**
**Policy Number**
**03.07.001**
[* * * *]
**4. Recruiting the Finalist**
Faculty must be assured that teaching responsibilities are comparable to those of the best public research universities. In order to get a <u>young</u> faculty member off to a good start, consider a temporary reduction from the standard teaching responsibilities for one year. This will allow more time for refining course materials, setting up a laboratory, modifying dissertations for publication, learning the ropes at the university, etc. <u>The [recruitment] package, in short, should be one designed to attract the best candidate</u> available to The University of Georgia.[27]

55.    UGA Policy No. 03.07.001(4) disadvantaged candidates who were substantially older than young candidates in faculty recruitment by not requiring young candidates to carry the customary teaching load required of substantially older candidates and, thereby, imposed more onerous requirements on substantially older candidates for faculty appointments.

56.    In 2023 and 2024, Defendant Rutledge ordered other members of the UGA Law School faculty search committees for 2023-2024 and 2024-2025 to not comment on faculty appointment candidates by email because such email comments would be subject to disclosure under the GORA.[28]

---

[27] Exhibit No. 16: The University of Georgia Policy Library, Policy No. 03.07.001(4),
https://policy.uga.edu/policies/#/programs/ByAZSCR5p?bc=true&bcCurrent=Recr uitment%20of%20Faculty&bcItemType=programs (visited 3/11/2025).

[28] Exhibit No. 11: GORA email request No. 25-279 (July 29, 2025); Exhibit No. 12: UGA Law School Dean Peter Rutledge Charge to Faculty Appointments Committees for Fall 2023 and Fall 2024.

57.    Defendant Rutledge made these aforementioned instructions in order to prevent the disclosure of discriminatory and/or retaliatory motivations for offering or not offering interviews to candidates that would otherwise have been memorialized in written records and could later become disclosed pursuant to GORA requests.

58.    The UGA Law School had no (0.0%) tenured or tenure-track Hispanic faculty members[29] among its approximately 66 fulltime faculty members[30] at the time of Plaintiff Martin's application notwithstanding that Hispanics reportedly constitute 5% of all U.S. fulltime law faculties.[31]

59.    The Law School continues to have no (0.0%) tenured or tenure-track Hispanic faculty members[32] among its approximately 66 fulltime faculty members.[33]

60,    All tenured and tenure-track faculty (both present and former members at the time of Plaintiff Martin's application) were hired at 55-years-of-age or less.[34]

---

[29] Exhibit No. 68: UGA EEO to EEOC Letter (5/28/2025).
[30] See UGA Law School's faculty directory (available at https://www.law.uga.edu/faculty-profiles).
[31] Exhibit No. 18: Seattle University School of Law, "Dean Anthony Varona to lead national task force on Hispanic representation," https://law.seattleu.edu/about/newscenter/all-current-stories/dean-anthony-varona-to-lead-national-task-force-on-hispanic-representation.html (24 Apr. 2023).
[32] Exhibit No. 68: UGA EEO to EEOC Letter (5/28/2025).
[33] See UGA Law School's faculty directory (available at https://www.law.uga.edu/faculty-profiles).
[34] Exhibit No. 68: UGA EEO to EEOC Letter (5/28/2025); see UGA Law School's faculty directory (available at https://www.law.uga.edu/faculty-profiles).

61. Evidence of animus against applicants who are older than 40 and/or substantially older than young applicants at UGA Law School extends as least as far back as 2009 when the present Law School dean and chair of the 2023-2024 and 2024-2025 search committees -- Defendant Rodrigues -- publicly stated on a weblog in 2009 that she was "sympathetic" with Iowa College of Law's opposition to an age discrimination law suit filed by an applicant (Donald Dobkin) for a faculty position at Iowa and preferred applicants who show scholarly "appetite" (rather than applicants who already had greater scholarship accomplishments) while she was serving as a member of an earlier faculty hiring committee at UGA's Law School. Furthermore, she contradicted herself by nonetheless approving of the conventional overriding criterion in law faculty hiring to be -- as she herself described it -- "scholarship, scholarship, scholarship."[35]

62. Defendant Rodrigues' age animus even extended to intentionally, maliciously, and/or recklessly falsely claiming that the Iowa law faculty applicant was a "would-be lawyer" notwithstanding that the applicant had practiced law for 25 years and had litigated over 7000 cases.[36]

---

[35] Exhibit No. 19: Usha Rodrigues, "I was an appointments committee virgin . . . ," The Conglomerate weblog (Aug. 21, 2009), https://www.theconglomerate.org/2009/08/i-was-an-appointments-committee-virgin.html (visited May 30, 2025).

[36] Exhibit No. 19: Usha Rodrigues, "I was an appointments committee virgin . . . ," The     Conglomerate     weblog     (Aug.     21,     2009),

***Plaintiff Martin's discriminatory treatment claim regarding UGAJobs No. F1697P position: chronology of related events.***

63.    On July 14, 2023, Defendant UGA Law School posted the following advertisement (No. F1697P) in the UGAJobs portal:

> The University of Georgia School of Law <u>invites applications to fill one or more tenure-track or tenured positions at the rank of assistant professor, associate professor, or professor</u>. The positions will begin in August 2024. Applicants must be committed to producing world-class scholarship, providing first-rate legal training, and engaging in meaningful service. <u>Priorities include criminal law and procedure</u>, tax law, and <u>international law</u>. Other curricular interests include fields such as commercial law (including bankruptcy and secured transactions), trusts and estates, corporate law, employment, and ethics (broadly understood to combine with other fields whether business, international, artificial intelligence, or something else). <u>Candidates who can teach in more than one of the above-listed disciplines will be especially helpful.</u>

> <u>All applications will be considered until the position is filled.</u> Interested persons should submit a letter of interest and curriculum vitae/resume with this application.

> Applicants should have a Juris Doctor (J.D.), Doctor of the Science of Law (J.S.D.), Doctor of Juridical Science (S.J.D.), LL.M. (Master of Laws), or Bachelor of Laws (LL.B.) from an accredited law school.

> Applicants seeking the rank of Associate Professor or Professor must have superior academic credentials and a demonstrated potential for excellence in scholarship, teaching, and service. The School of Law is committed to producing world-class ideas, so <u>candidates should have a</u>

---

https://www.theconglomerate.org/2009/08/i-was-an-appointments-committee-virgin.html (visited May 30, 2025).

demonstrated track record of scholarly publications or scholarly potential.[37]

64.    On Aug. 2, 2023, Rachel Van Cleave (hereinafter Comparator Van Cleave) applied for a F1697P appointment.[38] She is non-Hispanic[39] and approximately 61-years-old (± 2 years).[40] She teaches criminal law and criminal procedure. Her academic publications have been cited 241 times.[41] She is the former dean of Golden Gate University School of Law.[42]

65.    On Aug. 3, 2023, Maybell Romero (hereinafter Comparator Romero) applied for a No. F1697P position.[43] Comparator Romero is a Hispanic.[44] Comparator Romero is approximately 44-years-old (± 2 years) (approximately 21 years younger

---

[37] Exhibit No. 20: UGAJobs No. F1697P job posting (July 14, 2023).

[38] Exhibit No. 13: UGA Law School EEO Report for UGAJobs F1697P positions [line 277].

[39] Exhibit No. 13: UGA Law School EEO Report for UGAJobs F1697P positions [line 277].

[40] Exhibit No. 21(a): "Rachel Van Cleave," LinkedIn webpage, available at https://www.linkedin.com/in/rachelvancleave/ (visited 12/29/2025).

[41]    Exhibit    No.    21(b):    Rachel    Van    Cleave,    GoogleScholar, https://scholar.google.com/scholar?hl=en&as_sdt=0%2C10&q=%22rachel+van+cl eave%22&btnG=&oq=%22 (visited 9/30/2025).

[42] Exhibit No. 21(a): "Rachel Van Cleave," LinkedIn webpage, available at https://www.linkedin.com/in/rachelvancleave/ (visited 12/29/2025).

[43] Exhibit No. 13: EEO Report for F1697P position [line 246].

[44] Exhibit No. 13: EEO Report for F1697P position [line 246].

than Plaintiff Martin).[45] She teaches criminal law and criminal procedure.[46] Comparator Romero's academic publications had been cited 187 times.[47] UGA Law School did not offer Comparator Romero an interview on the basis that her "[p]ublication history [was] not as strong as that of candidates selected for interview".[48] Comparator Romero is now the McGlinchey Stafford Associate Professor at Tulane Law School.

66.    On Aug. 11, 2023, James Macleod (hereinafter Comparator Macleod) applied for a F1697P appointment.[49] On Jan. 12, 2024, UGA Law School offered him a job interview.[50] Comparator Macleod is non-Hispanic[51] and is approximately 40-years-old (± 2 years) (approximately 25 years younger than Plaintiff Martin).[52] He had

---

[45] Exhibit No. 22: Maybell Romero, Tulane Law School website, https://law.tulane.edu/sites/default/files/2025-08/Maybell-Romero.pdf    (visited Sept. 13, 2025) (c.v.).

[46] Exhibit No. 22: Maybell Romero, Tulane Law School website, https://law.tulane.edu/sites/default/files/2025-08/Maybell-Romero.pdf    (visited Sept. 13, 2025) (c.v.).

[47] Exhibit    No.    23:    "Maybell    Romero,"    GoogleScholar, https://scholar.google.com/citations?user=0vkBL6EAAAAJ&hl=en&oi=ao (visited Sept. 9, 2025).

[48] Exhibit No. 13: EEO Report for F1697P position [line 246].

[49] Exhibit No. 13: EEO Report for UGAJobs F1697P positions [line 209].

[50] Exhibit: Usha Roderigues to James Macleod F1697P job interview offer email (1/12/2024).

[51] Exhibit No. 13: EEO Report for UGAJobs F1697P positions [line 209].

[52] Exhibit No. 77: James Macleod, Cardozo Law School webpage, https://cardozo.yu.edu/sites/default/files/2025-09/Macleod%20CV%20Sept%202025.pdf (visited 11/10/2025).

taught criminal law and criminal procedure for four years.[53] His academic publications have been cited 254 times.[54]

67.    On Aug. 20, 2023, Anjelica Hendricks (hereinafter Comparator Hendricks) applied for a F1697P appointment.[55] She is non-Hispanic.[56] She is approximately 35-years-old (± 2 years) (approximately 30 years younger than Plaintiff Martin).[57] She had taught employment law, criminal law, and/or criminal procedure for one year[58] when she was later offered an interview for a F2044P position. Her academic publications have been cited 18 times.[59]

68.    On Aug. 22, 2023, Defendants 2023-2024 Search Committee Members offered Charles P. Trumbull (hereinafter Comparator Trumbull) an interview after reviewing his materials in the FAR[60] -- notwithstanding that he did not apply for an

---

[53] Exhibit No. 77: James Macleod, Cardozo Law School webpage, https://cardozo.yu.edu/sites/default/files/2025-09/Macleod%20CV%20Sept%202025.pdf (visited 11/10/2025).

[54] Exhibit No. 24: "James A. Macleod," GoogleScholar, https://scholar.google.com/citations?user=2Eg6KYMAAAAJ&hl=en&oi=ao (visited 9/30/2025).

[55] Exhibit No. 13: EEO Report for UGAJobs F1697P positions [line 183].

[56] Exhibit No. 13: EEO Report for UGAJobs F1697P positions [line 183].

[57] Exhibit No. 25: Anjelica Hendricks, LinkedIn, https://www.linkedin.com/in/anjelica-hendricks-b035595a/ (visited 11/10/2025).

[58] Exhibit No. 25: Anjelica Hendricks, LinkedIn, https://www.linkedin.com/in/anjelica-hendricks-b035595a/ (visited 11/10/2025).

[59] Exhibit No. 26: "Anjelica Hendricks," GoogleScholar, https://scholar.google.com/scholar?hl=en&as_sdt=0%2C10&q=%22anjelica+hendricks%22&btnG=&oq=%22 (visited 9/30/2025).

[60] Exhibit No. 69: Defendant Rodrigues email to Comparator Trumbull (8/22/2023).

appointment for a F1697P position until Sept. 16, 2023 -- in the fields of international human rights law and international humanitarian law[61] -- the same fields of law as Plaintiff Martin. Comparator Trumbull is non-Hispanic. He is approximately 45-years-old[62] (± 2 years) (approximately 20 years younger than Plaintiff Martin). He had no teaching experience[63] – unlike Plaintiff Martin. Comparator Trumbull's publications had been cited 304 times.[64] Plaintiff Martin's publications had been cited more than 400 times.

69.    On or before Oct. 17, 2023, Defendant Rutledge verbally offered Desiree LeClercq (Ganz) (hereinafter Comparator LeClercq) one of the No. F1697P positions[65] in violation of the aforementioned UGA policy governing contracts.[66]

---

[61] Exhibit No. 70: Comparator Trumbull application (9/16/2023).

[62] Exhibit No. 68: UGA EEO to EEOC Letter (5/28/2025).

[63] Exhibit No. 70: Comparator Trumbull application (9/16/2023).

[64] Exhibit No. 71: "Charles P. Trumbull," GoogleScholar, https://scholar.google.com/scholar?q=%22charles+p.+trumbull%22&hl=en&as_sdt =0%2C10&as_ylo=1990&as_yhi=2023 (visited 2/22/2026).

[65] Exhibit No. 28: Dean Rutledge Email to UGA Law School Faculty reporting verbal offer of F1697P position to Desiree LeClercq (Oct. 17, 2023).
[66] Exhibit No. 15: University of Georgia, *UGA Contract Approval and Execution Policy*, "III. Policy," https://policy.uga.edu/policies/#/programs/B1UKjFsVT?bc=true&bcCurrent=Cont ract%20Approval%20and%20Execution%20Policy&bcGroup=Legal%20Affairs% 20&bcItemType=programs) (emphasis added) (visited 3/11/2025).

70.     Comparator LeClercq is non-Hispanic.[67] Comparator LeClercq is 45-years-old[68] (approximately 20 years younger than Plaintiff Martin). Comparator LeClercq teaches international law, trade law, and employment law. Comparator LeClercq's academic publications have been cited 175 times.[69]

71.     On Nov. 11, 2023, Plaintiff Martin applied for the UGAJobs No. F1697P position through UGAJobs.[70] Pursuant to the announcement's instructions, Plaintiff Martin submitted the following letter with his *c.v.*:

11 November 2023

Faculty Appointments Committee
University of Georgia School of Law
225 Herty Drive
Athens, GA 30602-6012

RE: Faculty Appointment Application

Dear Committee Members:

In support of my application for a faculty position teaching international law, criminal law, and criminal procedure, please consider the following.

As indicated in my *c.v.* (attached), I have been a human rights advocate for the last forty years as both a law professor and litigator. I am the youngest person ever appointed to the Ariel F. Sallows Chair in Human

---

[67] Exhibit No. 13: EEO Report for No. F1697P positions [line 168].
[68] Exhibit No. 68: UGA EEO to EEOC Letter (5/28/2025).
[69] Exhibit No. 29: "Desiree LeClercq," GoogleScholar, https://scholar.google.com/citations?user=NMyI_D8AAAAJ&hl=en (visited Sept. 13, 2025).
[70] Exhibit No. 30: Francisco Martin Application for UGAJobs No. F1697P position (Nov. 11, 2023).

Rights at University of Saskatchewan College of Law, which is the oldest chair in human rights law in the world. (Previous holders of the Sallows Chair have included the secretary generals of Amnesty International and Oxfam-Canada.) I also have taught or lectured at many law schools in the U.S. and the U.K.

I am the principal author of *International Human Rights and Humanitarian Law* (Cambridge Univ. Press 2006, 7th ed. 2011) that is the foremost international human rights law textbook and third leading humanitarian law textbook as measured by library holdings worldwide. I am also the principal author of *International Human Rights Law & Practice: Cases, Treaties &* Materials (Kluwer Law International, 1997) that was the first practitioner's desk book addressing all international human rights and humanitarian tribunal systems. Both of these books provide a comparative analysis between international law and U.S. law (including the areas of criminal law and procedure). My 2001 Sallows Lecture addressing the applicability of international human rights law to the use of force under the law of armed conflict has been cited by and/or discussed in dozens of leading scholarly publications, the International Committee of the Red Cross, and the European Court of Human Rights.

In respect to the domestic implementation of international law, I also authored *Challenging Human Rights Violations: Using International Law in U.S. Courts* (Brill, 6th ed. 2001) and *The Constitution as Treaty: The International Legal Constructionalist Approach to the U.S. Constitution* (Cambridge Univ. Press, 2007, 5th ed. 2012). This latter monograph is held by more libraries worldwide than most of the leading monographs addressing the relationship between U.S. constitutional law and international law, including those authored by Louis Henkin, Curtis Bradley, Anthony Bellia, David Sloss, and John Murphy.

I also was executive director of the National Lawyers Guild, the largest human rights bar association in New York. As the founder and president of Rights International, I litigated dozens of cases before UN, Inter-American, European, and African international human rights and criminal tribunals and was the first American to win a case before the African Commission on Human and Peoples' Rights. And, of course, I also have litigated numerous cases addressing a wide array of human rights before U.S. federal and state courts while working for the ACLU and other organizations. And, strangely enough, I am the first person since the Civil

War to litigate U.S. maritime piratical forfeiture and salvage case, the subject of which I address in two forthcoming books.

If the Appointments Committee is looking to hire an individual who has a long successful track record of thinking outside the box and breaking new ground in both international and U.S. constitutional legal scholarship, I'm your person.

Thank you for your time and consideration of this matter.

Warmly yours,

*F.F. Martin*

Francisco Forrest Martin
5125 Palm Springs Blvd.
Unit 7307
Tampa, FL  33647
Tel: 813-255-7110
Email: ffmartin60@gmail.com[71]

72.    Plaintiff Martin fulfilled all formal application requirements (*e.g.*, letter of interest and *c.v.*) as well as all qualifications for at least the position of assistant professor in the job announcement.

73.    Plaintiff Martin's attached *c.v.* in his application included additional information providing evidence that was material to meeting the requirements of the UGAJobs No. F1697P position in the areas of teaching, research, publications, and public service. For example, outside of his teaching J.D. and LL.M. students at the

---

[71] Exhibit No. 30: Francisco Martin Application for UGAJobs No. F1697P position (Nov. 11, 2023).

University of Saskatchewan College of Law, University of Miami School of Law, and St. Thomas University School of Law over five years, Plaintiff Martin taught and supervised dozens of J.D. student interns in international law, criminal law, and criminal procedure over an additional seven years in his capacity of president of Rights International, The Center for International Human Rights Law, Inc.[72]

74.    According to Google Scholar search engine results, Plaintiff Martin's academic publications had been cited over 400 times at the time of his application.[73]

75.    The UGA Law School never invited Plaintiff Martin to interview for any of the F1697P positions. The UGA Law School never made an offer of appointment to Plaintiff Martin for any of the F1697P positions.

76.    On Dec. 8, 2023, Comparator LeClercq submitted her application for the No. F1697P position through UGAJobs – nearly one month after Plaintiff Martin submitted his application.[74]

77.    On Dec. 20, 2023, Defendant Rutledge made a written offer to Comparator LeClercq for a No. F1697P position as an assistant professor.[75] Defendant Rutledge

---

[72] Exhibit No. 30: Francisco Martin Application for UGAJobs No. F1697P position (Nov. 11, 2023).
[73] Exhibit No. 31: "Francisco Forrest Martin," GoogleScholar, https://scholar.google.com/citations?user=jDOxHjoAAAAJ&hl=en (visited Sept. 12, 2025).
[74] Exhibit No. 13: EEO Report for No. F1697P positions.
[75] Exhibit No. 32: Dean Rutledge Assist. Professor appointment offer letter to Desiree LeClercq (Dec. 20, 2023).

on behalf of the UGA Law School offered Comparator LeClercq the position of assistant professor with an academic yearly base salary of $193,000.00 (annually renewable pending satisfactory review of her performance) and with the expectation that she would not teach in the Fall 2024 semester, teach only one course in the Spring 2025 semester, and teach only two courses in the Fall 2025 semester.[76]

78.    On Dec. 22, 2023, Comparator LeClercq accepted Defendant Rutledge's written job offer – over 40 days after Plaintiff Martin submitted his application on Nov. 11, 2023.[77]

79.    On or about Jan. 9, 2024, Defendant Rodrigues invited Nadia Banteka (hereinafter Comparator Banteka) to interview for a No. F1697P position.[78] Comparator Banteka is non-Hispanic[79] and approximately 39-years-old (± 2 years) (approximately 26 years younger than Plaintiff Martin).[80] Comparator Banteka had taught international law, criminal law, and/or criminal procedure to graduate law

[76] Exhibit No. 32: Dean Rutledge Assist. Professor appointment offer letter to Desiree LeClercq, p. [1] (Dec. 20, 2023). UGA estimates benefits at 39% of salary. Exhibit No. 33: University of Georgia, Frequently Used Information - Sponsored Projects Administration, uga.edu, https://spa.uga.edu/frequently-used-information/# (visited Feb. 9, 2025).

[77] Exhibit No. 32: Dean Rutledge Assist. Professor appointment offer letter to Desiree LeClercq (Dec. 20, 2023).

[78] Exhibit No. 34: Nadia Banteka Faculty Appointment Interview Date Email (Jan. 9, 2024).

[79] Exhibit No. 13: EEO Report for F1697P positions [line 115].

[80] Exhibit No. 35: Nadia Banteka, Application to UGAJobs F1697P position (2/2/2024).

school students for four years[81] (the same areas as Plaintiff Martin). Comparator

Banteka's academic publications have been cited approximately 200 times.[82]

80.    On Feb. 2, 2024, Comparator Banteka applied for a No. F1697P position –

more than two months after Plaintiff Martin applied.[83]

81.    On Feb. 5, 2024, Assistant Prof. Emmanuel Arnaud (hereinafter Comparator

Arnaud) applied for a No. F1697P position – more than two months after Plaintiff

Martin applied.[84] Comparator Arnaud is Hispanic.[85] Comparator Arnaud is

approximately 34-years-old (± 2 years) (approximately 31 years younger than

Hispanic Plaintiff Martin and approximately 10 years younger than Hispanic

Comparator Romero).[86] Comparator Arnaud had taught criminal law for two years.[87]

Comparator Arnaud's academic publications had been cited 49 times[88] (whereas

---

[81] Exhibit No. 35: Nadia Banteka, Application to UGAJobs F1697P position (2/2/2024).

[82]    Exhibit    No.    36:    "Nadia    Banteka,"    GoogleScholar, https://scholar.google.com/citations?user=J1MkKpgAAAAJ&hl=en&oi=ao (visited Sept. 12, 2025).

[83] Exhibit No. 13: EEO Report for F1697P positions [line 115].

[84] Exhibit No. 13: EEO Report for UGAJobs No. F1697 positions [line 111].

[85] Exhibit No. 13: EEO Report for UGAJobs No. F1697 positions [line 111].

[86]    Exhibit    No.    37:    Emmanuel    Arnaud,    BU    Law    School    website, https://www.bu.edu/law/files/2025/07/ArnaudEmmanuel_CV-08.2025.pdf (visited Sept. 14, 2025) (c.v.).

[87]    Exhibit    No.    37:    Emmanuel    Arnaud,    BU    Law    School    website, https://www.bu.edu/law/files/2025/07/ArnaudEmmanuel_CV-08.2025.pdf (visited Sept. 14, 2025) (c.v.).

[88]    Exhibit    No.    38:    "Emmanuel    Hiram    Arnaud,"    GoogleScholar, https://scholar.google.com/citations?user=lw5dEVIAAAAJ&hl=en&oi=ao (visited Sept. 12, 2025).

Hispanic Comparator Romero's publications have been cited 187 times and Hispanic Plaintiff Martin's publications had been cited over 400 times and yet both were not offered interviews).

82. On Mar. 18, 2024, the UGA Law School offered Comparator Arnaud an appointment as an assistant law professor,[89] which he declined on the basis of insufficient salary.[90] Instead, Comparator Arnaud accepted an offer for an associate professorship with a higher salary from Boston University School of Law.[91]

83. When Defendants 2023-2024 Search Committee Members did offer an interview to a Hispanic applicant specializing in criminal law (*viz.* Comparator Arnaud), they did not offer interviews to two other Hispanic applicants specializing in criminal law (*viz.,* Plaintiff Martin and Comparator Romero) because they were substantially older than Comparator Arnaud notwithstanding that they had more years of teaching experience and more scholarship impact.

84. Defendants 2023-2024 Search Committee Members did not offer Comparator Van Cleave an interview for a F1697P position on the basis that her "[p]ublication history was not as strong as that of candidates selected for interview."[92] This

---

[89] Exhibit No. 39: Emmanuel Arnaud Faculty Appointment Offer Letter (Mar. 18, 2024).

[90] Exhibit No. 13: EEO Report for UGAJobs No. F1697 positions [line 111].

[91] Exhibit No. 37: Emmanuel Arnaud, BU Law School website, https://www.bu.edu/law/files/2025/07/ArnaudEmmanuel_CV-08.2025.pdf (visited Sept. 14, 2025) (c.v.).

[92] Exhibit No. 13: EEO Report for F1697P positions [line 277].

explanation was false because both Comparators Arnaud and Banteka -- who were more than 20 years younger than Comparator Van Cleave (and Plaintiff Martin), and who were offered interviews -- had respectively 10 and 17 publications whereas Comparator Van Cleave had 18 publications[93] (and Plaintiff Martin had over 20[94]) and a greater number of citations to her publications than Comparators Arnaud and Banteka.

85.    On Mar. 25, 2024, Defendant Rutledge offered Pamela Foohey an appointment as full professor with the reduced teaching duty of 8 credits (instead of the 9-10 credit hours per year expected from other faculty members) in her first year of teaching.[95] She is 43-years-old[96] (± 2 years) (approximately 22 years younger than Plaintiff Martin).[97]

---

[93] Exhibit No. 78: "Rachel A. Van Cleave," SSRN webpage, available at https://papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=1122828    (visited 3/6/2026).

[94] Exhibit No. 30: Francisco Martin Application for UGAJobs No. F1697P position (Nov. 11, 2023).

[95] Exhibit No. 40: Rutledge job offer to Foohey, p. [1] (Mar. 25, 2025).

[96] Exhibit No. 68: UGA EEO to EEOC Letter (5/28/2025).

[97] Exhibit No. 41: "Pamela Foohey," Indiana Univ. Maurer School of Law faculty webpage,    https://law.indiana.edu/about/people/__archive/foohey-pamela.html (visited Oct. 21, 2025) (providing undergraduate graduation year).

***Plaintiff Martin's discriminatory treatment claim regarding UGAJobs No. F2044P position: chronology of related events.***

86.    On July 24, 2024, UGAJobs advertised job posting No. F2044P that nearly mirrored the positions advertised earlier in UGAJobs jobs posting No. F1697P. The advertisement stated in relevant part:

> The University of Georgia School of Law invites applications to fill one or more tenure-track or tenured positions at the rank of assistant professor, associate professor, or professor. The positions will begin August 2025, with a possibility of a January 1 start date. Applicants must be committed to producing world-class scholarship, providing first-rate legal training, and engaging in meaningful service. Curricular priorities include criminal law and procedure, corporate and securities law, contracts, and torts. Other specific curricular interests include trusts and estates, international, administrative and employment. Applicants who can teach in more than one of the above-listed disciplines will be especially helpful, as will applicants with varied backgrounds, educational and professional experiences, or research perspectives.[98]

Again, UGA Law School prioritized criminal law and procedure but only stated a curricular interest in international law.

87.    On July 29, 2024, the UGA Office of Faculty Affairs claimed to have marked the earlier UGAJobs Posting No. F1697P as "closed" on the same date.[99]

---

[98] Exhibit No. 14: UGAJobs Posting No. F2044P (July 24, 2024).
[99] Exhibit No. 42: Office of Faculty Affairs to Kristen Marinzel (Director of UGA School of Law Human Resources (July 29, 2024) Email.

88.    On or before Aug. 14, 2024, the Association of American Law School advertised Plaintiff Martin's inclusion in its 2024-2025 FAR.[100]

89.    Defendants 2024-2025 Search Committee Members responsible for screening and offering interviews to candidates for the No. F2044P positions in criminal law, criminal procedure, and international law solicited FAR candidates for interviews who had not applied for the F2044P positions.

90.    Defendants 2024-2025 Search Committee Members did not invite Plaintiff Martin for an interview notwithstanding that they had knowledge of Plaintiff Martin's inclusion in the 2024-2025 FAR and his qualifications contained therein.

91.    On Aug. 15, 2024, UGA Law School offered non-Hispanic Comparator Hendricks an interview for a faculty appointment[101] notwithstanding that Comparator Hendricks did not apply for a F2044P appointment but had applied earlier for a F1697P position.[102] She was offered an appointment (which she declined[103]).

---

[100] Exhibit No. 43: AALS Faculty Appointments Register Form for Francisco Forrest Martin (2024-2025).

[101] Exhibit No. 44: Heather Simmons to Anjelica [Hendricks] F2044P interview offer email (8/15/2024).

[102] See Exhibit No. 14: EEO Report for UGAJobs F2044P positions (no mention of A. Hendricks).

[103] Exhibit No. 13: EEO Report for No. F1697P positions.

92.    On Aug. 18, 2024, Defendants 2024-2025 Search Committee Members invited Hispanic Comparator Romero to interview for a No. F2044P position[104] notwithstanding that Comparator Romero did not apply for the position until Sept. 13, 2024.[105] UGA Law School did not offer her an appointment because her "interview not as strong as that of candidate selected to receive offer".[106]

93.    On Aug. 20, 2024, Eileen Prescott (hereinafter Comparator Prescott) applied for a UGAJobs No. F2044P position.[107] Comparator Prescott is a non-Hispanic.[108] Comparator Prescott is approximately 32-years-old (± 2 years) (approximately 33 years younger than Plaintiff Martin).[109] Comparator Prescott had taught criminal law and/or criminal procedure for two years.[110] Comparator Prescott's academic publications have been cited only one time.[111]

---

[104] Exhibit No. 45: Defendant Usha Rodrigues to Prof. Maybell Romero email (Aug. 18, 2024) (job talk interview invitation for No. F2044P position).

[105] Exhibit No. 14: EEO Report for UGAJobs No. F2044P positions [line 180].

[106] Exhibit No. 14: EEO Report for UGAJobs No. F2044P positions [line 180].

[107] Exhibit No. 14: EEO Report for UGAJobs No. F2044P positions [line 175].

[108] Exhibit No. 14: EEO Report for UGAJobs F2044P positions [line 175].

[109] Exhibit No. 46: Eileen Prescott, UGA Law School website, https://www.law.uga.edu/sites/default/files/uploaded-files/Prescott%20UGA%20CV%20_0.pdf (c.v.) (visited Sept. 12, 2025).

[110] Exhibit No. 46: Eileen Prescott, UGA Law School website, https://www.law.uga.edu/sites/default/files/uploaded-files/Prescott%20UGA%20CV%20_0.pdf (c.v.) (visited Sept. 12, 2025).

[111] Exhibit No. 47: "Eileen Prescott," GoogleScholar, https://scholar.google.com/scholar?hl=en&as_sdt=0%2C10&q=%22Eileen+prescott%22&btnG=&oq=%22eileen%22 (visited Sept. 12, 2025).

94.    On Aug. 27, 2024, Plaintiff Martin filed his Charge with the EEOC against UGA Law School and UGA for employment discrimination on the bases of national origin and age for their refusals to interview and hire him for Nos. F1697P and F2044P positions.[112]

95.    In his discrimination Charge (as well as later discrimination Charge against Defendant Board[113]), Plaintiff Martin alleged that no present law faculty member had been hired older than the age of 54 and that no present law faculty member is of Hispanic national origin -- all grievances that represented issues of public concern addressing repeated practices and patterns of age and national origin discrimination in hiring.[114]

96.    UGA Law School and UGA did not notify Plaintiff Martin that they had decided not to interview or hire him before the filing of his Charge.

97.    On Aug. 29, 2024, Mr. Martin agreed to mediation with UGA and UGA Law School.

---

[112] Exhibit No. 2: Charge No. 410-2024-10828 (*Francisco Forrest Martin v. University of Georgia and University of Georgia School of Law*).

[113] Exhibit No. 55: EEOC Charge of Discrimination No. 410-2025-04488 (*Francisco Forrest Martin v. Board of Regents of the University System of Georgia*).

[114] Exhibit No. 2: Charge No. 410-2024-10828 (*Francisco Forrest Martin v. University of Georgia and University of Georgia School of Law*).

98.    On Sept. 9, 2024, Marissa Jackson (hereinafter Comparator Jackson) submitted her application for a UGAJobs No. F2044P position.[115] She is Hispanic[116] and had taught international and/or commercial law for less than four years.[117] Comparator Jackson is approximately 39-years-old (± 2 years) (approximately 5 years younger than Comparator Romero and 26 years younger than Plaintiff Martin).[118] Comparator Jackson's academic publications have been cited 215 times.[119] Defendants 2024-2025 Search Committee Members offered Comparator Jackson an interview, but she was not offered an appointment because her "interview not as strong as that of candidate selected to receive offer".[120]

99.    On Sept. 12, 2024, Defendants 2024-2025 Search Committee Members offered Comparator Macleod an interview for a F2044P appointment[121] notwithstanding that Comparator Macleod had not applied for a F2044P

---

[115] Exhibit No. 14: EEO Report for UGAJobs F2044P positions [line 144].

[116] Exhibit No. 14: EEO Report for UGAJobs F2044P positions [line 144].

[117] Exhibit No. 48: Marissa Jackson, Univ. of Richmond Law School webpage (c.v.), available at https://assets.richmond.edu/files/faculty-staff-bio/law/sow_marissajackson_cv.pdf (visited 9/18/2025).

[118] Exhibit No. 48: Marissa Jackson, Univ. of Richmond Law School webpage (c.v.), available at https://assets.richmond.edu/files/faculty-staff-bio/law/sow_marissajackson_cv.pdf (visited 9/18/2025).

[119] Exhibit No. 49: "Marissa Jackson Sow," GoogleScholar, https://scholar.google.com/citations?user=lSOyBIUAAAAJ&hl=en&oi=ao (visited 9/18/2025).

[120] Exhibit No. 14: EEO Report for UGAJobs F2044P positions [line 144].

[121] Exhibit No. 51: Usha Roderigues to James Macleod F2044P job interview offer email (9/12/2024).

appointment but had earlier applied for and been interviewed for a F1697P position.[122]

100. On Nov. 11, 2024, Defendants 2024-2025 Search Committee Members offered Comparator Prescott an interview.[123]

101. On Dec. 12, 2024, Defendants 2024-2025 Search Committee Members offered Comparator Van Cleave an interview for a F2044P appointment[124] notwithstanding that Comparator Van Cleave had not applied for a F2044P appointment.[125]

102. On Dec. 16, 2024, Defendants 2024-2025 Search Committee Members offered Comparator Banteka the opportunity to give a job talk in support of her application for a No. F1697P position for which she had earlier applied.[126] Comparator Banteka did not apply for a No. F2044P position.[127]

---

[122] See Exhibit: EEO Report for UGAJobs F2044P positions (no mention of J. Macleod); Exhibit No. 50: Usha Roderigues to James Macleod F1697P job interview offer email (1/12/2024).

[123] Exhibit No. 14: EEO Report for UGAJobs No. F2044P positions [line 175].

[124] Exhibit No. 53: Christopher Bruner to Rachel [Van Cleave] F2044P interview offer email (12/9/2024).

[125] See Exhibit No. 14: EEO Report for UGAJobs F2044P positions (no mention of R. Van Cleave).

[126] Exhibit No. 34: Nadia Banteka Faculty Appointment Interview Date Email (Jan. 9, 2024); Exhibit No. 54: Christopher Bruner to Nadia Banteka email (12/16/24) (job talk interview offer).

[127] See Exhibit No 14: EEO Report for UGAJobs posting of F2044P positions (no mention of N. Banteka).

103. Nevertheless, Defendants 2024-2025 Faculty Appointments Committee members still were considering Comparator Banteka for a No. F1697P position even after the UGA Office of Faculty Affairs claims to have marked UGAJobs Posting No. F1697P as "closed" on July 29, 2024.[128]

104. On Jan. 15, 2025, Assistant Professor Alexis Hoag-Fordjour (hereinafter Comparator Hoag-Fordjour) applied for a F2044P position.[129] She appeared to be around 43-years-old at the time of her application (± 2 years) (approximately 21 years younger than Plaintiff Martin).[130] She is non-Hispanic.[131] She had taught criminal law and/or criminal procedure for four years.[132] Her publications had been cited 97 times.[133] UGA Law School offered her an interview and appointment.[134]

---

[128] Exhibit No. 42: Office of Faculty Affairs to Kristen Marinzel (Director of UGA School of Law Human Resources (July 29, 2024) Email.

[129] Exhibit No. 14: EEO Report for UGAJobs No. F2044P positions.

[130] Exhibit No. 75: Prof. Alexis Hoag-Fordjour *c.v.,* Brooklyn Law School website, available at https://www.brooklaw.edu/contact-us/hoag-fordjour-alexis/ (visited 12/22/2025).

[131] Exhibit No. 14: EEO Report for UGAJobs No. F2044P positions.

[132] Exhibit No. 75: Prof. Alexis Hoag-Fordjour *c.v.,* Brooklyn Law School website, available at https://www.brooklaw.edu/contact-us/hoag-fordjour-alexis/ (visited 12/22/2025).

[133] Exhibit No. 76: "Alexis Hoag-Fordjour," GoogleScholar, https://scholar.google.com/scholar?q=%22alexis+hoag-fordjour%22&hl=en&as_sdt=0%2C10&as_ylo=1990&as_yhi=2025 (visited 2/23/2026).

[134] Exhibit No. 14: EEO Report for UGAJobs No. F2044P positions.

105. On Jan. 22, 2025, Plaintiff Martin filed a new Charge (No. 410-2025-04488) against the Board of Regents of the University System of Georgia as the proper respondent to Title VII and ADEA charges.[135]

106. On or about Feb. 21, 2025, Defendant Board submitted their Position Statement.[136] This new Position Statement was identical to the earlier Position Statement submitted by UGA and UGA Law School (except that it lacked two attached exhibits (*viz.*, Exhibits C and D) and provided a more complete EEO Report).

107. On Feb. 24, 2025, UGA Law School offered an appointment to Comparator Prescott for a No. F2044P position as an assistant professor in criminal law and criminal procedure with the reduced initial teaching duty of 8 credits (instead of the 9-10 credit hours per year expected from other faculty members).[137]

108. UGA Law School did not offer Comparator Van Cleave an appointment. The EEO Report for F2044P positions did not provide a reason for not offering her an appointment because Comparator Van Cleave had not applied for a F2044P position.

---

[135] Exhibit No. 55: EEOC Charge of Discrimination No. 410-2025-04488 (*Francisco Forrest Martin v. Board of Regents of the University System of Georgia*).

[136] Exhibit No. 56: USG Board of Regents' Position Statement to Charge No. 410-2025-04488.

[137] Exhibit No. 57: Eileen Prescott Faculty Appointment Offer Letter (Feb. 24, 2025).

109. Instead, UGA Law School offered positions to Comparators Prescott and Hoag-Fordjour (who were more than 15 years younger than Comparator Van Cleave and Plaintiff Martin) and who respectively had only two[138] and 11[139] publications whereas Comparator Van Cleave had 18 publications[140] (and Plaintiff Martin had over 20[141]) and a greater number of citations to her publications and greater number of years of teaching experience than Comparators Prescott and Hoag-Fordjour (as did Plaintiff Martin).

110. The Defendants (except Defendant Taylor) implemented UGA Policy No. 03.07.001(4) that gave preferential treatment to young candidates at the expense of substantially older candidates by offering reduced teaching duties to the following candidates considered for F1697P and/or F2044P positions: Comparators LeClercq,

---

[138] Exhibit No. 46: Eileen Prescott, UGA Law School website, https://www.law.uga.edu/sites/default/files/uploaded-files/Prescott%20UGA%20CV%20_0.pdf (c.v.) (visited Sept. 12, 2025).

[139] Exhibit No. 75: Prof. Alexis Hoag-Fordjour c.v., Brooklyn Law School website, available at https://www.brooklaw.edu/contact-us/hoag-fordjour-alexis/ (visited 12/22/2025).

[140] Exhibit No. 78: "Rachel A. Van Cleave," SSRN webpage, available at https://papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=1122828 (visited 3/6/2026).

[141] Exhibit No. 30: Francisco Martin Application for UGAJobs No. F1697P position (Nov. 11, 2023).

Foohey, and Prescott, Meighan Parker, Assaf Harpaz, and John Meixner, William

Ortman[142] – all of whom are substantially younger than Plaintiff Martin.[143]

***UGA Law School's and Defendant Board's Position Statements in response to Plaintiff Martin's discrimination Charges.***

111.    On or about Sept. 30, 2024, UGA Law School submitted their Position

Statement.[144] They denied Mr. Martin's age and national origin discrimination

claims under the ADEA and Title VII.[145]

112.    UGA Law School's Position Statement admitted to the following claims made

by Plaintiff Martin in his Charge:

(i)    Mr. Martin was qualified for all the job positions. As UGA's Law School's Position Statement states: "Charging Party met the qualifications of the job postings in question . . . ."[146]

(ii)    UGA Law School never invited Mr. Martin for a job interview.[147]

---

[142] Exhibit No. 73: Appointment Offer letter to William Ortman (4/15/2025).

[143] Exhibit No. 68: UGA EEO to EEOC Letter (5/28/2025); Exhibit No. 72: EEOC Questionnaire for Defendant Board (9/19/2025) and Defendant Board's Responses; Exhibit No. 40: Rutledge job offer to Foohey, p. [1] (Mar. 25, 2025); Exhibit No. 74:    William Ortman *c.v.*, UGA School of Law webpage, available at https://www.law.uga.edu/sites/default/files/uploaded-files/Ortman%20CV%20July%202025.pdf (visited 2/23/2026) (approx.. 20 years younger than Plaintiff Martin).

[144] Exhibit No. 52: University of Georgia School of Law Position Statement to Charge No. 410-2024-10828.

[145] Exhibit No. 52: University of Georgia School of Law Position Statement to Charge No. 410-2024-10828, p. [1].

[146] Exhibit No. 52: University of Georgia School of Law Position Statement to Charge No. 410-2024-10828, p. [3].

[147] Exhibit No. 52: University of Georgia School of Law Position Statement to Charge No. 410-2024-10828, p. [3].

(iii) UGA Law School was only in the <u>process</u> of filling the positions when Mr. Martin applied for a position. The Respondent <u>had not filled</u> the positions.[148]

(iv) UGA Law School never had notified him that it had decided not to hire him.

113. UGA Law School's Position Statement did not dispute Plaintiff Martin's following claims in his Charge:

(i) that Mr. Martin is a Dominican-American,

(ii) that Mr. Martin was 64-years-old,

(iii) that Comparator LeClercq was considerably less qualified than Mr. Martin for the advertised positions in terms of teaching J.D. and LL.M. candidates, number of publications, scholarly impact of publications as measured by number of citations to publications, graduate legal education, litigation experience, and other legal professional and leadership experience,

(iv) that Comparator LeClercq is approximately 20 years younger than Mr. Martin,

(v) that no present law faculty member was hired older than the age of 54, and

(vi) that the Charge was not timely filed.

114. UGA Law School's Position Statement (as well as Defendant Board's later Position Statement) proffered the following two explanations and two elaborations of their explanations for not interviewing Mr. Martin:

---

[148] Exhibit No. 52: University of Georgia School of Law Position Statement to Charge No. 410-2024-10828, p. [3].

(i) **"Charging Party met the qualifications of the job postings in question, but was not interviewed because the positions they were most qualified were already in the process of being filled by applicants who were already being pursued at the time their materials were submitted."[149]**

115. The UGA Law School's above proffered explanation was intentionally misleading because <u>no</u> positions in international law, criminal law, and criminal procedure had been filled by the date of when Plaintiff Martin submitted his application for a F1697 position. The Law School (and Defendant Board) intentionally used the phrase "already in the process of being filled" to falsely indicate that the positions had already been filled. However, the phrase "already in the process of being filled" cannot mean "already filled" in the instant case because none of the positions – in fact -- had been filled.

116. <u>Regarding the F1697 positions, Comparators LeClercq, Arnaud, Banteka, Prescott, and Jackson did not submit their applications until after Plaintiff Martin had already submitted his application.</u>

117. <u>Regarding the F2044P positions, Defendants 2024-2025 Search Committee Members drew candidates -- *viz.*, Comparators Hendricks, Romero, Macleod, and Van Cleave -- from the earlier F1697P applicant pool who had not applied for the F2044P positions in offering interviews for the F2044P positions to these applicants.</u>

---

[149] Exhibit No. 52: University of Georgia School of Law Position Statement to Charge No. 410-2024-10828, p. [3].

118. Furthermore, Defendants 2024-2025 Search Committee Members offered Comparator Hoag-Fordjour an interview and appointment for a F2044P position in the teaching areas of criminal law and procedure after Plaintiff Martin earlier had applied for a F1697P appointment in the same areas of teaching.

   (ii)   **"While some overlap exists between [the No. F1697P position and No. F2044P position] searches, they are not one-to-one and represent the shifting faculty needs for the University of Georgia School of Law that are a natural result of legal pedagogy and faculty and staff career transitions year-to-year."[150]**

119. The UGA Law School's above proffered elaborative statement is false and contradicted by their own subsequent statement in their Position Statement: namely, "[f]aculty members with expertise in practice areas relevant to foundational courses, such as criminal law and procedure, are <u>constantly need[ed]</u> and are frequently prioritized in hiring initiatives year-to-year."[151]

   (iii)  **"Desiree LeClercq (Ganz) . . . submitted [her] application[ ] and [was] hired via a competitive search well before Charging Party submitted their materials for consideration within this specific search."[152]**

---

[150] Exhibit No. 52: University of Georgia School of Law Position Statement to Charge No. 410-2024-10828, p. [2].

[151] Exhibit No. 52: University of Georgia School of Law Position Statement to Charge No. 410-2024-10828, p. [2] (emphasis added).

[152] Exhibit No. 52: University of Georgia School of Law Position Statement to Charge No. 410-2024-10828, p. [1].

120.   The UGA Law School's above proffered elaborative statement  is patently false. As already noted above, Comparator LeClercq did not submit her application until after Plaintiff Martin submitted his application.

### (iv)    Plaintiff Martin's "teaching experience [did] not align with the department's needs".[153]

121.   The UGA Law School's above proffered explanation is false because their claim is contradicted by the fact that UGA Law School identified the areas of international law, criminal law, and criminal procedure as priority teaching and/or curricular interest areas – the identical areas that Plaintiff Martin had identified as his areas of expertise in teaching (as well as in publication accomplishments, scholarship, and service) in his application materials.

122.   Furthermore, Defendants 2023-2024 Search Committee Members offered Comparator Trumbull – who specialized in international human rights and international humanitarian law as did Plaintiff Martin -- an interview for a F1697P position notwithstanding that Comparator Trumbull had no teaching experience unlike Plaintiff Martin. In other words, Defendants 2023-2024 Search Committee Members still offered Comparator Trumbull an interview notwithstanding that the absence of his teaching experience made it impossible for him to meet or align with the department's needs. Nevertheless,  Defendants 2023-2024 Search Committee

---

[153] Exhibit No. 13: EEO Report for No. F1697P positions.

Members still decided not to offer Plaintiff Martin an interview on the purported basis that Plaintiff Martin's teaching experience did not align with the department's needs even when he had teaching experience in the identical curricular areas of law which Comparator Trumbull did not.

123. UGA Law School and Defendant Board in their Position Statements only proffered the above two explanations for refusing to offer Plaintiff Martin an interview and appointment.

124. After the EEOC received UGA Law School's and Defendant Board's Position Statements, it requested that both "[s]tate each and every reason why the charging party was not selected for the position in question."[154] Both UGA Law School and Defendant Board did not add any additional explanations.

125. The above two purported reasons are the only reasons for the Law School's and Defendant Board's refusal to offer Plaintiff Martin an interview and appointment.

---

[154] Exhibit No. 27: EEOC Request for Information from University of Georgia School of Law (1/31/2025) (emphasis added); Exhibit No. 67: EEOC Charge No. 410-2025-04488 Request for Information from Defendant Board (5/19/2025) and Defendant Board's Response (emphases added).

126. The UGA Law School's and Defendant Board's Position Statements and EEO Reports failed to provide explanations for offering interviews and appointment offers to candidates.[155]

127. The UGA Law School and Defendant Board did not provide explanations for appointment offers when the EEOC later requested them to provide an explanation(s) for such appointment offers.[156]

128. Comparators Van Cleave, Romero, Macleod, Hendricks, Trumbull, LeClercq, Banteka, Arnaud, Prescott, Jackson, and Hoag-Fordjour had fewer citations to their publications than Plaintiff Martin when Plaintiff Martin applied in 2023.

129. Comparators Banteka, Macleod, Hendricks, Trumbull, Arnaud, Prescott, Jackson, and Hoag-Fordjour had fewer or no years of teaching graduate law students than Plaintiff Martin in the areas of international law, criminal law, and/or criminal procedure when Plaintiff Martin applied in 2023.

130. When Defendants 2024-2025 Faculty Appointments Committee Members considered Hispanic applicants for interviews, they offered an interview to Hispanic Comparator Jackson who was more than 20 years younger than Hispanic Plaintiff

---

[155] See, e.g., Exhibit No. 13: EEO Report for UGAJobs No. F1697P positions; Exhibit No. 14: EEO Report for UGAJobs No. F2044P positions.

[156] Exhibit No. 27: EEOC Request for Information from University of Georgia School of Law(1/31/2025); Exhibit No. 67: EEOC Charge No. 410-2025-04488 Request for Information from Defendant Board (5/19/2025) and Defendant Board's Response.

Martin and five years younger than Hispanic Comparator Romero, but did not offer interviews to Plaintiff Martin and Comparator Romero notwithstanding that Hispanic Comparator Jackson had fewer publications, had fewer citations to their publications, and had fewer years of teaching experience than Plaintiff Martin and Comparator Romero then instead offered the appointment to non-Hispanic FAR candidate Comparator Prescott who had fewer publications, had fewer citations to her publications, and had fewer years of teaching experience than Plaintiff Martin and Comparators Jackson and Romero.

131. The Defendants had knowledge that Plaintiff Martin was substantially older than all the aforementioned Comparators as such knowledge was easily inferred from information contained in his cover letter and *c.v.* submitted with his application as compared with the application materials submitted by the Comparators. For example, Plaintiff Martin's application materials stated that he had been a "human rights advocate for the last forty years as both a law professor and litigator," and his *c.v.* stated that he graduated from college in 1982.[157]

132. Furthermore, the Defendants had knowledge of Plaintiff Martin's age before the No. F1697P and/or No. F2044P positions had been filled because Plaintiff Martin

---

[157] Exhibit No. 30: Francisco Martin Application for UGAJobs No. F1697P position (Nov. 11, 2023).

had stated in his Charge against UGA Law School on Aug. 28, 2024 and in his Charge against Defendant Board on Jan. 22, 2025 that he was 64-years-old.

133.    Defendant Board, Defendants 2023-2024 Search Committee Members, and Defendants 2024-2025 Search Committee Members had knowledge that Plaintiff Martin was Hispanic by virtue of the following facts: (i) Plaintiff Martin's Hispanic status was easily inferred from his Hispanic first name (Francisco); (ii) his Hispanic status was easily inferred from his litigation, research, and publications in Hispanic-related subjects detailed in his *c.v*; and his 2024-2025 FAR Form explicitly stated that he was Hispanic. [158]

134.    In implementing the UGA Policy No. 03.07.001(4) and/or acting consistently with this policy's preference for young candidates by interviewing and/or hiring the Comparators and not Plaintiff Martin, the Defendants (except Defendant Taylor) violated the earlier policy's own stated purpose of attracting the "best candidate[s]" by undercutting or eliminating the very criteria in the areas of teaching, scholarship, and service for faculty appointments required by other UGA policies.[159]

---

[158] Exhibit No. 30: Francisco Martin Application for UGAJobs No. F1697P position (Nov. 11, 2023); Exhibit No. 43: AALS Faculty Appointments Register Form for Francisco Forrest Martin (2024-2025).

[159] See Exhibit No. 10: University of Georgia, *The University of Georgia Guidelines for Appointment, Promotion, and Tenure of Academic Rank Faculty Approved by the University Council April 2004 (Revised by the University Council Spring, 2006 Fall, 2007 Spring, 2010, 2011 Fall, 2011 Spring, 2013, 2014, 2017, 2020 Fall 2022; Latest revisions take effect August 1, 2023), pp. 1, 2, 6-13,*

135. The Defendants' implementation of UGA Policy No. 03.07.001(4) and/or actions committed consistent with the age preference reflected in UGA Policy No. 03.07.001(4) caused Plaintiff Martin as a law faculty candidate to be placed at a comparative disadvantage to those Comparators who were more than 15 years younger than Plaintiff Martin by reducing the requisite teaching qualifications for such younger Comparators in their first year of teaching by eliminating the customary expectation that such candidates would teach 9-10 credit hours.

136. UGA Law School did not hire any qualified Hispanic applicants for the No. F1697P positions notwithstanding that there were 21 (10.6%) qualified Hispanics among the total 197 qualified applicants, according to the UGA Law School's EEO Report.[160] The law school selected only two Hispanics (1%) for an interview among the 197 qualified applicants.

137. UGA Law School also did not hire any qualified Hispanic applicants for the No. F2044P positions notwithstanding that there were six (5.6%) qualified Hispanics among the 107 qualified applicants. The law school selected only three Hispanics (2.8%) for an interview among the 107 qualified applicants.[161]

---

https://provost.uga.edu/wp-content/uploads/appointment-promotion-tenure-guidelines-academic-rank-faculty.pdf (visited Feb. 9, 2025).

[160] Exhibit No. 13: EEO Report for No. F1697P positions.
[161] Exhibit No. 14: EEO Report for UGAJobs No. F2044P positions.

138. Plaintiff Martin would not have suffered the harm of not receiving a Law School faculty appointment caused by these Defendants' refusals to interview and/or hire Plaintiff Martin for the F1697P or F2044P positions but for the aforementioned intentional, willful, malicious, reckless, and/or callous acts of national origin, age, and national origin plus age discrimination in employment hiring committed by the Defendants (except Defendant Taylor).

139. The Defendants (except Defendant Taylor) have demonstrated a past, ongoing, and/or continuing practice and/or pattern of national origin, age, and/or national origin plus age discrimination in hiring tenured and tenure-track faculty candidates at the Law School.

140. The Defendants' animus against Plaintiff Martin for being Hispanic as reflected in the aforementioned intentional, willful, malicious, reckless, and/or callous acts of national origin and national origin plus age discrimination in employment hiring committed by the Defendants influenced and/or played a role in and/or caused these Defendants' refusals to interview and/or hire Plaintiff Martin for the F1697P and F2044P positions.

*Plaintiff Martin's retaliation and chilling claims: chronology of related events.*

141. On March 2, 2025, Plaintiff Martin requested copies of records of UGA Law School <u>interview offers</u> for faculty appointments as well as faculty <u>appointment</u>

offers (Request No. 25-090) from the UGA Open Records Office pursuant to the GORA.[162]

142. On Mar. 27, 2025, Defendant Taylor and/or UGA Open Records Office initially reported that "the UGA Law School report[ed] having no responsive documents" to Plaintiff Martin's request for copies of records "providing the dates of interview offers made by the University of Georgia School of Law for the faculty appointment positions for years 2023, 2024, and 2025."[163]

143. On April 2, 2025, Plaintiff Martin again requested copies of records of UGA Law School faculty appointment offers for 2024 and 2025 (Request No. 25-090) from the UGA Open Records Office because such records existed on the basis that other candidates had been hired.[164]

144. On April 7, 2025, Plaintiff Martin notified Defendant Board, UGA Law School, and the EEOC that the Law School's implementation of UGA Policy No. 03.07.001(4) had placed him "as an older applicant at a disadvantage *vis-à-vis* younger applicants in hiring by reducing the required performance qualifications for

---

[162] Exhibit No. 58: F.F. Martin – UGA Open Records Office email exchanges regarding Georgia Open Records Act Request No. 25-090.
[163] Exhibit No. 58: F.F. Martin – UGA Open Records Office email exchanges regarding Georgia Open Records Act Request No. 25-090 (emphasis added).
[164] Exhibit No. 58: F.F. Martin – UGA Open Records Office email exchanges regarding Georgia Open Records Act Request No. 25-090.

younger applicants in the areas of teaching, scholarship, and service."[165]

145.   Consequently, one month later on May 7, 2025, Defendant Board reported to the EEOC and Plaintiff Martin that the policy's "actual intent" for using "young faculty member" was not meant to connote age. Defendant Board reported that "the intended effect of the policy is to facilitate smoother transitions for newly recruited faculty members as they learn the ropes of the university and get set up." Defendant Board reported that UGA Office of Faculty Affairs (which was directed by Defendant Weeks who in turn was supervised by Defendant Hu) had "updated" the policy by replacing the policy's language of "young faculty member" with "early career faculty member" "in order to make this meaning [of the policy's actual intent and intended effect] as explicit as possible."[166]   Later on Sept. 19, 2025, Defendant Board reported to the EEOC that the earlier May 2025 change in the policy's

---

[165] Exhibit No. 82: Negotiated Settlement Agreement: Charge No. 410-2025-04488 (*Francisco Forrest Martin v. Board of Regents of the University System of Georgia*) and Charge No. 410-2024-10828 (*Francisco Forrest Martin v. University of Georgia and University of Georgia School of Law*) (Apr. 7, 2025).

[166] Exhibit No. 83: Response to Charging Party's Negotiated Settlement Agreement: Charge No. 410-202504488 (*Francisco Forrest Martin v. Board of Regents of the University System of Georgia*) and Charge No. 410-2024-10828 (*Francisco Forrest Martin v. University of Georgia and University of Georgia School of Law*) (May 7, 2025); Exhibit No. 17: The University of Georgia Policy Library, Policy No. 03.07.001(4),
https://policy.uga.edu/policies/#/programs/ByAZSCR5p?bc=true&bcCurrent=Recr
uitment%20of%20Faculty&bcItemType=programs (visited 15 May 2025).

language was implemented "to provide greater clarity that the temporary reduction in standard teaching responsibilities was for early career-state faculty members."[167]

146.   Defendants Board, Hu, Ayers, and Weeks, and UGA Office of Faculty Affairs did not provide any factual documentary evidence to support the above claims as to the actual intent and intended effect of UGA Policy No. 03.07.001(4).

147.   On Sept. 19, 2025,[168] Defendant Board reported to the EEOC that no records were available regarding the adoption date of UGA Policy No. 03.07.001(4) because the adoption of UGA Policy No. 03.07.001(4) predated the tenures of "both the current and former Associate[[169]] Vice President[s] of Academic Affairs" (*viz.,* Defendants Ayers and Hu) who respectively began their tenures in 2020 and 2015.[170]

148.   It was **impossible** for Defendants Board, Weeks, Hu, and/or Ayers and/or UGA Office of Faculty Affairs to conclude that the actual intent and intended effect of UGA Policy No. 03.07.001(4)'s earlier use of "young faculty member" did not refer to age because they had no available records from which to draw that conclusion.

---

[167] Exhibit No. 72: EEOC Questionnaire for Defendant Board (9/19/2025) and Defendant Board's Responses.

[168] Exhibit No. 72: EEOC Questionnaire for Defendant Board (9/19/2025) and Defendant Board's Responses.

[169] There was no and is no "associate" vice president of academic affairs at UGA since at least 2020. There is only a senior vice president of academic affairs.

[170] The beginning tenure dates are mistaken. Defendants Hu and Ayers began their tenures respectively  in July 2019 and July 2025.

149.  Therefore, Defendant Board's and/or UGA Office of Faculty Affairs' report that the actual intent and intended effect of UGA Policy No. 03.07.001(4)'s use of "young faculty member" was false.

150.  UGA Office of Faculty Affairs and/or Defendants Hu and/or Weeks amended the earlier version of UGA Policy No. 03.07.001(4) for the purpose of bringing the policy into compliance with the ADEA and to provide a false interpretation of the policy's use of "young faculty member."

151.  Defendant Board and/or UGA Office of Faculty Affairs provided explanations that were false *post hoc* rationalizations[171] of an age discriminatory policy and of a repeated practice and/or pattern of age discrimination.

152.  The "plain and ordinary"[172] meaning of UGA Policy No. 03.07.001(4)'s use of "young faculty member" did refer to age because the plain, ordinary, and primary meanings of "young" refer to age.[173]

---

[171] *Department of Commerce v. New York*, No. 18–966, 588 U.S. --, 139 S. Ct. 2551 (2019) ("The reasoned explanation requirement of administrative law, after all, is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public. Accepting contrived reasons would defeat the purpose of the enterprise.").

[172] *Deal v. Coleman*, 294 Ga. 170, 172 (1)(a), 751 S.E.2d 337 (2013) (plain and ordinary meaning of a text must be read "in its most natural and reasonable way, as an ordinary speaker of the English language would"); see *Handel v. Powell*, 284 Ga. 550, 553, 670 S.E.2d 62 (2008) ("The judicial branch determines independently whether the agency's interpretation 'correctly reflects the plain language of the statute and comports with the legislative intent.'").

[173] *Collins Dictionary* defines "young" as follows:

153. In the alternative, if records indicating the adoption date of the UGA Policy No. 03.07.001(4) were in fact available, then the report and/or interpretation of the policy's use of "young faculty member" made by Defendant Board, Hu, Ayers, and/or Weeks and/or UGA Office of Faculty Affairs indicating that such records were not available was false and was intended to conceal information requested by the EEOC.

154. Georgia State's *Administrative Procedure Act* has required UGA since at least 1975 to do the following:

> (3) Make available for public inspection all rules and all other written statements of policy or interpretations formulated, adopted, or used by the agency in the discharge of its functions; and
> (4) Make available for public inspection all final orders, decisions, and opinions . . . . Ga. Code § 50-13-3(a)(3)-(4).[174]

---

**1. adjective**

A **young** person, animal, or plant has not lived or existed for very long and is not yet mature.
* * * *

**2. adjective** [*ADJ n*]

You use **young** to describe a time when a person or thing was young.
* * * *

**3. adjective**

Someone who is **young** in appearance or behavior looks or behaves as if they are young.

"Young," Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/young (visited 5/21/2025).

[174] See also Ga. Code § 50-13-4(a)(1)-(2) (2024) (all proposed policy amendments and their purposes must be subject to public notice and comment).

155. Georgia's Administrative Procedure Act, Ga. Code § 50-13-3(a)(3)-(4) suggests that records providing factual evidence concerning the earlier policy's actual intent and intended effect in its use of or interpretation of the phrase "young faculty member" should have been available.

156. Moreover, UGA Office of Faculty Affairs' and/or Defendants Hu's and/or Weeks' interpretation and/or amendment of the earlier version of the policy's language was taken without the required authorization from UGA's President, USG's Chancellor, and/or UGA's University Council Executive Committee.[175]

157. UGA Office of Faculty Affairs' and/or Defendants Hu's and/or Weeks' amendment of the earlier policy's language was impermissible as a matter of longstanding administrative law because their action was not authorized by the UGA Statutes or Defendant Board's policies.[176]

158. Defendant Board also failed to answer the EEOC's following questions:

    (i)    "Are the members of the Search and Screening Faculty Appointments Committees aware of Policy No. 03.07.001(4)?

---

[175] University Statutes, arts. V, § 2(1)-(2) and XVI. Courts cannot defer to the state agency interpretation and/or amendment of a policy when the agency is not lawfully authorized to interpret and/or amend the policy. See *North Fulton Med. Center v. Stephenson*, 269 Ga. 540, 544(1), 501 S.E.2d 798 (1998) ("Administrative agencies may not 'change a statute by interpretation, or establish different standards within a statute that are not established by a legislative body.'").

[176] See *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) ("an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained").

(ii)    "Is the Provost and Deans Rodrigues and Rutledge aware of Policy No. 03.07.001(4), herein referenced?"[177]

159.   If Defendant Board had answered the above two questions, their answers would have revealed that Defendants Hu, Ayers, Weeks, Rodrigues, Rutledge, 2023-2024 Search Committee Members, and/or 2024-2025 Search Committee Members did have knowledge of UGA Policy No. 03.07.001(4).

160.   In refusing to answer the above two questions, Defendant attempted to conceal that Defendants Hu, Ayers, Weeks, Rodrigues, Rutledge, 2023-2024 Search Committee Members, and/or 2024-2025 Search Committee Members were aware of UGA Policy No. 03.07.001(4) and that these Defendants were potentially liable for unlawful age discrimination.

161.   Alternatively, if the Defendants had no knowledge of UGA Policy No. 03.07.001(4) in either its earlier or present version, the Defendants still adhered to a custom of giving preferential treatment to substantially younger applicants than other older candidates and/or or to early career faculty candidates that represented a proxy for giving preferential treatment to applicants who were substantially younger than other applicants such as Plaintiff Martin.

162.   UGA Law School does not consider full professors early career faculty members.

---

[177] Exhibit No. 72: EEOC Questionnaire for Defendant Board (9/19/2025) and Defendant Board's Responses.

163. The earlier version of UGA Policy No. 03.07.001(4) reflected a preference for young candidates in terms of age when making appointment offers regardless of whether they were early career faculty members or not.

164. In the instant case, the Defendants (except Defendant Taylor) implemented UGA Policy No. 03.07.001(4) that gave preferential treatment to young candidates at the expense of older candidates, implemented the earlier version of the policy understanding it to give preference to young (in terms of age) candidates because the plain and ordinary meaning of "young" refers to age, and/or acted consistently with this earlier version of the policy's preference for young (in terms of age) candidates, by offering reduced teaching duties to the following candidates: UGA Law School Assistant Professors Desiree LeClercq, Meighan Parker, Assaf Harpaz, Eileen Prescott, and John Meixner, and UGA Law School full Professors Pamela Foohey and William Ortman[178] – all of whom are substantially younger than Plaintiff Martin.[179]

---

[178] Exhibit No. 73: Appointment Offer letter to William Ortman (4/15/2025).

[179] Exhibit No. 68: UGA EEO to EEOC Letter (5/28/2025); Exhibit No. 72: EEOC Questionnaire for Defendant Board (9/19/2025) and Defendant Board's Responses; Exhibit No. 40: Rutledge job offer to Foohey, p. [1] (Mar. 25, 2025); Exhibit No. 74: William Ortman *c.v.*, UGA School of Law webpage, available at https://www.law.uga.edu/sites/default/files/uploaded-files/Ortman%20CV%20July%202025.pdf (visited 2/23/2026) (approx.. 20 years younger than Plaintiff Martin).

165. In the instant case in response to the EEOC's request that Defendant Board identify present faculty members offered appointments with reduced teaching duties who included members who were not early career faculty members, Defendant Board only reported candidates offered assistant professorship appointments and failed to report that full Professors Foohey and Ortman also were given reduced teaching duties.[180] Defendant Board's failure to identify full Professors Foohey and Ortman was intended to conceal such fact of their professorial rank and, thereby, support Defendants Board's, Hu's, Ayers', and/or Weeks', and/or UGA Office of Faculty Affairs' false claim that UGA Policy No. 03.07.001(4) was designed to apply to early career faculty members.

166. On April 11, 2025, Defendant Taylor and/or the UGA Open Records Office reported the following:

> we have again forwarded your request [for copies of records of UGA Law School faculty appointment offers for 2023, 2024 and 2025] to the Law School for a second review external of the dean's office. The Law School reports it has responsive material (offers made and accepted) for Fall 2023 to present.[181]

---

[180] Exhibit No. 72: EEOC Questionnaire for Defendant Board (9/19/2025) and Defendant Board's Responses (no mention of Foohey); Exhibit No. 40: Rutledge job offer to Foohey, p. [1] (Mar. 25, 2025).

[181] Exhibit No. 58: F.F. Martin – UGA Open Records Office email exchanges regarding Georgia Open Records Act Request No. 25-090.

167. Defendant Rodrigues (who was and is the Law School dean) attempted to conceal the existence of such <u>appointment offer</u> records requiring the UGA Open Records Office to make a second request to the other custodians at UGA Law School external of the office of Defendant Rodrigues.

168. On Apr. 14, 2025, Plaintiff Martin again requested from the UGA Open Records Office copies of records of UGA Law School faculty interview offers.[182]

169. On May 7, 2025, Defendant Board reported to the EEOC and Plaintiff Martin the following:

> The Charging Party's claim regarding the false reporting of the non-existence of records is the product of miscommunication in the Open Records process. Said miscommunication has been addressed and the designated Open Records Manager [*viz.*, Defendant Taylor] has confirmed responsive records are currently being gathered to be produced to the requestor within the timeframe required by applicable law. [183]

170. On May 25, 2025, Plaintiff Martin emailed Seattle University School of Law Dean Anthony Varona the following request for information regarding the percentage of Hispanics among U.S. law school faculties for the purpose of publicly

---

[182] Exhibit No. 58: F.F. Martin – UGA Open Records Office email exchanges regarding Georgia Open Records Act Request No. 25-090.

[183] Exhibit No. 83: Response to Charging Party's Negotiated Settlement Agreement: Charge No. 410-202504488 (*Francisco Forrest Martin v. Board of Regents of the University System of Georgia*) and Charge No. 410-2024-10828 (*Francisco Forrest Martin v. University of Georgia and University of Georgia School of Law*) (May 7, 2025).

exposing and pursuing redress of his and others' grievances of employment

discrimination in U.S. law school faculty hiring through the EEOC and courts:

> Dear Dean Varona:
>
> I am the former Ariel F Sallows Professor of Human Rights at the University of Saskatchewan College of Law. I understand that you were appointed as a taskforce co-chair by the HNBA [Hispanic National Bar Association] to examine the number of Hispanic members in law school faculties in the US a couple of years ago. Has your taskforce determined the present percentage of Hispanics among US law school faculties in the US? If so, can you tell me what your taskforce has discovered?
>
> Thank you for your time and consideration of this matter.
>
> Best regards,
>
> Francisco Forrest Martin
> Email: ffmartin60@gmail.com[184]

171. On May 31, 2025, Plaintiff Martin emailed Comparator Arnaud the following

request for information regarding anti-Hispanic discrimination in law school faculty

hiring for the purpose of publicly exposing and pursuing redress of his and others'

grievances of employment discrimination in U.S. law school faculty hiring through

the EEOC and courts:

> Dear Prof. Arnaud:
>
> I am the former Ariel F Sallows Professor of Human Rights at the University of Saskatchewan College of Law. I am researching possible anti-Hispanic discrimination in law school faculty hiring in the US. Would you be willing to share your experiences with me regarding such -- if any --- discrimination? I am especially interested in seeing if

---

[184] Exhibit No. 81: Francisco F. Martin to Anthony Varona Email (May 25, 2025).

Hispanics offered faculty appointments were offered such appointments at significantly low salaries and/or other poor terms of employment in order to discourage such Hispanic candidates from accepting law faculty appointment offers.

Thanks for your time and consideration of this matter.

Francisco Forrest Martin
Email: ffmartin60@gmail.com[185]

172.    On July 10, 2025, Plaintiff Martin filed his retaliation Charge No. 410-2025-11553 against Defendant Board with the EEOC for refusing to consider him for a No. F2044P position and for repeatedly failing to produce copies of records that he had requested pursuant to GORA addressing Defendant UGA Law School's faculty appointment offers.[186]

173.    Defendant Board's Position Statement did not object to the timeliness of the filing of Plaintiff Martin's retaliation Charge.

174.    On July 20, 2025, Plaintiff Martin pursuant to the GORA requested from the UGA Open Records Office copies of records addressing UGA Policy No. 03.07.001(4) whose earlier version gave "young" faculty appointment candidates preferential treatment (Request No. 25-265).[187]

---

[185] Exhibit No. 80: Francisco F. Martin to Emmanuel Email (May 31, 2025).
[186] Exhibit No. 59: Retaliation Charge No. 410-2025-11553 (*Francisco Forrest Martin v. Board of Regents of the University System of Georgia* ) (July 10, 2025).
[187] Exhibit No. 60: F.F. Martin – UGA Open Records Office email exchanges regarding UGA Policy No. 03.07.001(4) (No. 25-265).

175.  As of this date – more than eight months after Plaintiff Martin made his GORA Request No. 25-265 -- the Defendants still have not fulfilled his request even after repeated subsequent requests for status updates from Plaintiff Martin.[188]

176.  The Defendants' provision of copies of such records addressing UGA Policy No. 03.07.001(4) would have given information related to UGA's actual intent of and intended effect in adopting the policy, its actual implementations of the policy, and/or the UGA Office of Faculty Affairs' and/or Defendants Hu's, Ayers', and/or Weeks' motivation for later amending the policy to replace the term "young" with "early career."

177.  On Aug. 1, 2025, Plaintiff Martin pursuant to the GORA requested from UGA Open Records Office copies of records addressing UGA's settlements of employment discrimination and retaliation claims by others (Request No. 25-284).[189]

178.  As of this date – more than eight months after Plaintiff Martin made his GORA Request No. 25-284 -- the Defendants still have not fulfilled his request even after repeated subsequent requests for status updates from Plaintiff Martin.[190]

---

[188] Exhibit No. 60: F.F. Martin – UGA Open Records Office email exchanges regarding UGA Policy No. 03.07.001(4) (No. 25-265).

[189] Exhibit No. 61: UGA Open Records Office email exchanges addressing settlements of UGA discrimination and retaliation claims (No. 25-284).

[190] Exhibit No. 61: UGA Open Records Office email exchanges addressing settlements of UGA discrimination and retaliation claims (No. 25-284).

179. On Aug. 1, 2025, Plaintiff Martin pursuant to the GORA requested from UGA Open Records Office copies of the following: "All records addressing the withdrawal/cancellation of job posting F1697P from the UGA's online employment application portal in 2024" (Request No. 25-285).[191]

180. In response, Defendant Taylor and/or the UGA Open Records office provided Plaintiff Martin copies of the records of a series of emails between the director of UGA School of Law's Human Resources unit (*viz.*, Kristen Marinzel) and the UGA Office of Faculty Affairs. In one email, the UGA Office of Faculty Affairs claims to have marked "closed" UGAJobs Posting No. F1697P on July 29, 2024 pursuant to an earlier email request from Ms. Marinzel.[192]

181. The purported closing of UGAJobs Posting No. F1697P by UGA Office of Faculty Affairs did not reflect a discontinued search because the positions were not reported filled by the UGA Office of Faculty Affairs until almost a year later on July 2, 2025.[193]

182. Furthermore, the UGA Law School in its earlier Position Statement stated the following:

---

[191] Exhibit No. 62: F.F. Martin email to UGA Open Records Office (Request No. 25-285) (addressing the withdrawal/cancellation of job posting F1697P from the UGA's online employment application portal in 2024) (Aug. 1, 2025).

[192] Exhibit No. 42: Office of Faculty Affairs to Kristen Marinzel (Director of UGA School of Law Human Resources (July 29, 2024) Email.

[193] Exhibit No. 63: UGA Office of Faculty Affairs to Kristen Marinzel (Director of UGA School of Law Human Resources to (July 2, 2025) Email.

Due to the size of these faculty searches, University of Georgia School of Law, in accordance with the general practice of the University of Georgia as a whole, does not provide individualized notice to applicants regarding the status of their applications until the applicant pool has been narrowed down to a smaller pool of viable candidates where it is more feasible to do so.[194]

183. Given that UGA Law School did not provide such "individualized notice" to Plaintiff Martin as to the status of his application for a F1697P position, the F1697 positions remained unfilled until July 2, 2025 when the UGA Office of Faculty Affairs reported the positions having been filled.

184. On or about Aug. 12, 2025, Defendant Board submitted their Position Statement in response to Plaintiff Martin's retaliation Charge.[195] Their Position Statement denied Plaintiff Martin's retaliation claims.[196]

185. In their Position Statement, Defendant Board proffered the following reason for their refusal to consider him for a F2044P faculty appointment position:

As stated in the Respondent Position Statements submitted to the EEOC in Charge Nos. 410-2024-10828 and 410-2025-04488, Mr. Martin only applied to the Fall 2024 Open Rank Law Faculty search embodied by UGAJobs Posting No. F1697P and posted on July 14, 2023. Mr. Martin submitted his application for consideration in this search on November 11, 2023, but was ultimately not a successful applicant in the 197-person applicant pool. Mr. Martin did not submit an application to the

[194] Exhibit No. 52: University of Georgia School of Law Position Statement to Charge No. 410-2024-10828, p. [2].
[195] Exhibit No. 64: USG Board of Regent's Position Statement to Plaintiff Martin's Retaliation Charge (Aug. 12, 2025).
[196] Exhibit No. 64: USG Board of Regent's Position Statement to Plaintiff Martin's Retaliation Charge, p. 1 (Aug. 12, 2025).

Fall 2025 Open Rank Law Faculty search embodied by UGAJobs Posting No. F2044P and posted on July 24, 2024. <u>Because each posting is treated as its own distinct search and applicant pool, applications to a similarly situated posting in the past are not considered in the new search.</u> This is a general applicable rule regarding searches and is not based on any protected characteristics of Mr. Martin or any protected activity he elected to pursue.[197]

186. As already demonstrated above, Defendant Board's claim in its Position Statement that "[b]ecause each posting is treated as its own distinct search and applicant pool, applications to a similarly situated posting in the past are not considered in the new search" is <u>false</u> because (i) the F1697P positions in international law, criminal law, and criminal procedure remained unfilled until July 2, 2025 and (ii) Defendants 2024-2025 Search Committee Members drew applicants from the earlier F1697P applicant pool who had not applied for the F2044P positions in offering interviews for the F2044P positions to these applicants.

187. Defendant Board proffered the following statements in Defendant Board's Position Statement addressing their repeated failures to produce copies of records requested by Plaintiff Martin pursuant to the GORA:

Mr. Martin made requests pursuant to the Georgia Open Records Act on March 10, 2025, and April 2, 2025. Email exchanges relevant to these Open Records Requests and demonstrating that the Open Records Division was actively working with Mr. Martin to refine the scope of his broad requests and produce responsive documents that were available and not otherwise subject to

---

[197] Exhibit No. 64: USG Board of Regent's Position Statement to Plaintiff Martin's Retaliation Charge, p. 1 (Aug. 12, 2025).

exceptions to production are attached as Exhibit A and Exhibit B respectively. These units continue to work with Mr. Martin as he submits additional requests beyond the scope of those referenced in the particulars in EEOC Charge No. 410-2025-11553. As evidenced by the memorialized exchanges and eventual production, these processes are in no way shaped by Mr. Martin's protected activities.[198]

188.   As demonstrated by the following events, Defendant Board's claims in its Position Statement that (i) the "Open Records Division was actively working with Mr. Martin" was misleading and that (ii) "[t]hese units continue to work with Mr. Martin as he submits additional requests beyond the scope of those referenced in the particulars in EEOC Charge No. 410-2025-11553" has never in fact materialized.

189.   On Sept. 4, 2025, Plaintiff Martin again requested copies of records of UGA Law School faculty appointment offers for 2024 and 2025 (GORA request No. 25-090) from UGA Open Records Office.[199]

190.   On Sept. 8, 2025 – more than six months after Plaintiff Martin's initial request -- Defendant Taylor and/or the UGA Open Records Office provided copies of only some records in response to Plaintiff Martin's GORA request No. 25-090, failed to provide copies of the appointment offers to Comparators Hendricks and Hoag-Fordjour, and as of this date still has not provided copies of the appointment offers

---

[198] Exhibit No. 64: USG Board of Regent's Position Statement to Plaintiff Martin's Retaliation Charge, p. 1 (Aug. 12, 2025).

[199] Exhibit No. 58: F.F. Martin – UGA Open Records Office email exchanges regarding Georgia Open Records Act Request No. 25-090.

to Comparators Hendricks and Hoag-Fordjour – more than one year after his initial request.[200]

191.  Among the copies of records that Defendant Taylor and/or the UGA Open Records Office provided on Sept. 8, 2025 was the Law School's appointment offer to Comparator Arnaud that were material to Plaintiff Martin's and the EEOC's investigation of his Charges.[201]

192.   On Sept. 23, 2025, Plaintiff Martin requested copies of all records referencing Plaintiff Martin from and to the UGA School of Law, UGA Office of Legal Affairs, UGA Human Resources, UGA Open Records office, UGA Equal Opportunity Office, and several UGA employees pursuant to the GORA (Request No. 25-372).[202]

193.  Defendant Taylor and/or UGA Open Records Office subsequently claimed the following:

> The search and review time for 514 MB of material will be 30 hours for a total estimate of $1,487.50, requiring at least 45 business days for review and production. The nearly two-year search yielded 617 items . . . [203]

---

[200] Exhibit No. 58: F.F. Martin – UGA Open Records Office email exchanges regarding Georgia Open Records Act Request No. 25-090.

[201] Exhibit No. 58: F.F. Martin – UGA Open Records Office email exchanges regarding Georgia Open Records Act Request No. 25-090 (emails dated 9/4/2025 & 9/8/2025).

[202] Exhibit No. 65: UGA Open Records Office email exchanges regarding Georgia Open Records Act Request No. 25-372.

[203] Exhibit No. 65: UGA Open Records Office email exchanges regarding Georgia Open Records Act Request No. 25-372.

194.   The Defendants falsely and/or grossly inflated the number of search yields and, thereby, the costs for producing copies of such records to be charged to and/or incurred by Plaintiff Martin in an effort to dissuade him from paying for such costs and, thereby, prevent him from receiving copies of records material to his petitions for redress of grievances and material to his participation in the EEOC's investigations of his Charges and claims.

195.   Those Defendants having custody of records subject to Plaintiff Martin's GORA requests Nos. 25-090, 25-265, 25-284, and 25-285 failed to fulfill Plaintiff Martin's requests within "three business days" or "as soon as practicable" as required by the Georgia Open Records Act, Ga. Code § 50-18-71(a) (2024).

196.   The Defendants had knowledge of Plaintiff Martin's filing of Charges of discrimination and/or retaliation against UGA Law School and Defendant Board by virtue of the Defendants' respective roles as UGA President, Provost and Senior Vice President for Academic Affairs, Associate Provost for Faculty Affairs, UGA Open Records Manager, records custodians, UGA Law School deans, and members of the UGA Law School faculty appointments committees in responding to Plaintiff Martin's Charges, EEOC investigatory requests for additional information, and responding to Plaintiff Martin's GORA requests.

197.   The Defendants offered Comparators Prescott, Macleod, Van Cleave, Banteka, Jackson, and Hoag-Fordjour interviews for, respectively, F11697P and/or

F2044P positions <u>after</u> the UGA Law School had received Plaintiff Martin's discrimination Charge No. 410-2024-10828 on Aug. 27, 2024.

198. The Defendants repeatedly have intentionally, willfully, maliciously, recklessly, and/or callously delayed the fulfillment of Plaintiff Martin's GORA requests by attempting to limit the scope of his requests under the guise of seeking "clarification" of his requests in order to delay and/or impede the disclosure of and/or conceal documentary evidence essential to his participation in the EEOC investigations and substantiating his discrimination and retaliation Charges, and did conceal such documentary evidence.

199. The Defendants' above acts were committed in order to retaliate against Plaintiff Martin for the filing of his Charges and for his participation in the EEOC investigations of his Charges, and were the respective causes of the harms incurred by Plaintiff Martin of not receiving a Law School faculty appointment and disabling the investigations and further development of his Charges suffered by Plaintiff Martin.

200. The Defendants' above acts also were committed in order to retaliate against and/or chill Plaintiff Martin in the exercise of his rights to speech and petition for redress of grievances through the EEOC and courts, and were the respective causes of the harms incurred by Plaintiff Martin of not receiving a Law School faculty

appointment and obstructing the investigations of his grievances and further development of his Charges suffered by Plaintiff Martin.

201. Specifically, these above retaliatory and chilling acts were the following: (i) the Defendants (except Defendant Taylor) refused to interview and/or hire Plaintiff Martin for the F1697P and/or F2044P positions in international law, criminal law, and criminal procedure; (ii) the Defendants delayed and impeded the fulfillment of his GORA requests; (iii) the Defendants attempted to conceal and/or did conceal the existence of records requested by Plaintiff Martin pursuant to his GORA requests; and/or (iv) the Defendants concealed the true purpose of UGA Policy No. 03.07.001(4) giving explicit preference to young candidates by amending the policy.

202. The aforementioned acts demonstrated a past, ongoing, and/or continuing practice and/or pattern of retaliatory and chilling acts.

203. The Defendants as custodians in possession and/or control of records subject to Plaintiff Martin's GORA requests were and are legally required to provide copies of those records to Plaintiff Martin under Ga. Code § 50-18-74(a).

204. The Defendants as custodians of records subject to Plaintiff Martin's GORA requests had knowledge of Plaintiff Martin's discrimination and/or retaliation

Charges, factual claims, and/or grievances against Defendant Board and UGA Law School.[204]

205.  The Defendants as respondents to UGA Equal Employment Opportunity Office requests for information for the drafting and submission of Defendant Board's and UGA Law School's Position Statements to the EEOC had knowledge of Plaintiff Martin's discrimination and/or retaliation Charges, factual claims, and/or grievances against Defendant Board and UGA Law School.

206.  Defendant Board required the Defendants to review and receive training in UGA Non-Discrimination and Anti-Harassment (NDAH) Policy, and to complete the Ethics Policy Compliance Agreement and the NDAH Policy Compliance Agreement.[205]

207.  Furthermore, the Defendants as lawyers, UGA President, Provost and Senior Vice President for Academic Affairs, Associate Provost for Faculty Affairs, UGA Open Records office manager, UGA supervisors, and/or UGA Law School professors had additional knowledge of and additional expertise regarding the requirements of and acts prohibited by Defendant Board's policies, UGA policies,

---

[204] See, *e.g.*, Exhibit No. 65: UGA Open Records Office email exchanges regarding Georgia Open Records Act Request No. 25-372.

[205] Exhibit No. 79: University of Georgia, "Mandatory ethics training" UGA Today (Mar 10, 2014), available at https://news.uga.edu/mandatory-ethics-training/ (visited 3/18/2026); Exhibit No. 72: EEOC Questionnaire for Defendant Board (9/19/2025) and Defendant Board's Responses.

Title VII, the ADEA, U.S. Const. amend. XIV, and the GORA that respectively pertained and/or would pertain to Plaintiff Martin's claims regarding age and national origin discrimination in hiring; retaliatory and chilling acts against persons exercising rights protected by federal law; equal protection of the laws; rights to freedom of speech and petition; and the avenues of EEOC and federal court redress available to Plaintiff Martin and others for Defendants' violations of their rights protected by federal law.

208.  Plaintiff Martin's communications with and pursuit of redress of his and others' grievances through the EEOC and courts had and would have the "purpose of rais[ing] issues of public concern"[206] as evidenced by Plaintiff Martin's aforementioned emails to Comparator Arnaud and law school Dean Varona regarding U.S. law school employment hiring practices, and by his GORA requests for copies of records concerning, *inter alia*, UGA settlements of employment discrimination and retaliation claims by others. These issues of public concern addressed the Defendants' repeated practices and/or pattern of age and national origin discrimination committed against not only Plaintiff Martin but also other Comparators and candidates at a Georgia state university which is supported by taxpayers, federal funding, and tuition fees from students.

---

[206] *Maggio v. Sipple*, 211 F. 3d 1346, 1353 (11th Cir. 2000).

209. Records addressing such issues of public concern also were subject to public disclosure by records requests made pursuant to the GORA and the federal Freedom of Information Act.

210. Such issues of public concern addressed grievances subject to potential redress by the EEOC as a Title VII and/or ADEA action through administrative[207] and/or U.S. district court on behalf of Plaintiff Martin and/or others.

211. Such issues of public concern addressed grievances subject to potential redress through a U.S. district court (after Plaintiff Martin had received his Notices of Right to Sue from the EEOC) as a Section 1983 individual or class action by Plaintiff Martin and/or others.

212. Conforming to his more than 40-year commitment to and practice of publicly exposing and publicly petitioning governments and courts for redress of civil rights and liberties violations committed against members of the public for the purpose of raising issues of public concern, Plaintiff Martin as a U.S. citizen and non-governmental human rights advocate communicated with and petitioned the EEOC for redress of grievances relating to age and national origin discrimination by UGA Law School. His petitions for redress of his grievances through the EEOC and courts cannot reasonably be characterized only as relating to private personnel grievance matter.

---

[207] 29 C.F.R. § 1614.204.

213.  As only an applicant for a UGA Law School faculty position who was not a state employee, Plaintiff Martin never did and never could participate in an internal Georgia state employment grievance process.

214.  As of April 4, 2026, UGA Law School was still seeking to fill a tenured and/or tenure-track faculty position in international law.[208]

215.  Except for UGA Policy No. 03.07.001(4), all aforementioned Defendant Board's and UGA policies (copies of which are herein incorporated as exhibits) and Georgia Code §§ 50-13-3(a)(3)-(4), 50-18-71(a), and 50-18-74(a) were legally issued, adopted, and/or enacted.

## CLAIMS

**Count No. 1: Plaintiff Martin's Section 1983 action against the Defendants for violating his 14th Amendment right to equal protection of the laws prohibiting national origin discrimination in state employment hiring.**

216.  Plaintiff Martin sues each of the named Defendants (except Defendant Board) pursuant to Section 1983. Plaintiff Martin repeats, realleges and incorporates by reference paragraphs 1 through 215 above, the same as if more fully set forth herein, and further avers that the each of the named Defendants (except Defendant Taylor), in their individual and official capacities, discriminated against him, because of his national origin, by wrongfully refusing to offer him an interview and appointment,

---

[208] Exhibit No. 84: UGAJobs posting for F2424P position, UGAJobs website, available at https://www.ugajobsearch.com/postings/472301 (visited 04/05/2026).

and that Defendants' animus against Plaintiff Martin's national origin was a substantial and/or motivating factor for the Defendants' (except Defendant Taylor's) refusals to interview and/or hire Plaintiff Martin.

217.    Plaintiff Martin is of Hispanic national origin and is protected by U.S. Const. amend. XIV's Equal Protection Clause.

218.    Each of the aforesaid refusals of the named Defendants (except Defendant Taylor), and other actions yet to be discovered, violated U.S. Const. amend. XIV prohibiting national origin discrimination in state employment hiring.

219.    Aforesaid Defendants intentionally, willfully, and/or maliciously acted and/or acted with reckless and/or callous indifference to Plaintiff's foreseeable, clearly established, federally protected rights and had no probable cause for their discriminatory acts.

220.    Aforesaid Defendants' refusals to interview and/or hire Plaintiff Martin proximately caused Plaintiff Martin to suffer damages.

## Count No. 2: Title VII action for national origin discrimination in hiring.

221.    Plaintiff Martin sues Defendant Board pursuant to Title VII. Plaintiff Martin repeats, realleges and incorporates by reference paragraphs 1 through 215 above, the same as if more fully set forth herein, and further avers that the each of the named Defendants (except Defendant Taylor), in their individual and/or official capacities

as agents of and/or decision-makers for Defendant Board, discriminated against him, on the basis of his national origin, by wrongfully refusing to offer him an interview and appointment.

222. Plaintiff Martin is of Hispanic national origin and is protected by Title VII.

223. Each of the aforesaid refusals of the named Defendants (except Defendant Taylor), and other actions yet to be discovered, violated Title VII prohibiting national origin discrimination in employment hiring.

224. Aforesaid Defendants intentionally, willfully, and/or maliciously acted and/or acted with reckless and/or callous indifference to Plaintiff's foreseeable, clearly established, federally protected rights.

225. Aforesaid Defendants' animus against Plaintiff Martin's national origin played a role in and/or influenced and/or caused Defendants' decisions to refuse him interview and appointment offers.

226. Aforesaid Defendants' refusals to interview and/or hire Plaintiff Martin proximately caused Plaintiff Martin to suffer damages.

**Count No. 3: ADEA action for age discrimination in hiring.**

227. Plaintiff Martin sues Defendant Board pursuant to the ADEA. Plaintiff Martin repeats, realleges and incorporates by reference paragraphs 1 through 215 above, the same as if more fully set forth herein, and further avers that the each of the named

Defendants, in their individual and/or official capacities as agents of and/or decision-makers for Defendant Board, discriminated against him because of his age by refusing to offer him an interview and appointment.

228. Plaintiff Martin was between the ages of 63 and 70 inclusive at the time that the Defendants refused to interview and/or hire him, and he is protected by the ADEA.

229. Each of the aforesaid refusals of the named Defendants (except Defendant Taylor), and other actions yet to be discovered, violated the ADEA prohibiting age discrimination in employment hiring.

230. Aforesaid Defendants intentionally, willfully, and/or maliciously acted and/or acted with reckless and/or callous indifference to Plaintiff's foreseeable, clearly established, federally protected rights.

**Count No. 4: Title VII action for national origin plus age discrimination in hiring.**

231. Plaintiff Martin sues Defendant Board pursuant to Title VII. Plaintiff Martin repeats, realleges and incorporates by reference paragraphs 1 through 215 above, the same as if more fully set forth herein, and further avers that the each of the named Defendants (except Defendant Taylor), in their individual and/or official capacities as agents of and/or decision-makers for Defendant Board, discriminated against him,

because of his national origin plus age, by wrongfully refusing to offer him an interview and appointment.

232.  Plaintiff Martin is of Hispanic national origin and is protected by Title VII.

233.  Each of the aforesaid refusals of the named Defendants (except Defendant Taylor), and other actions yet to be discovered, violated Title VII prohibiting national origin discrimination plus age in employment hiring.

234.  Aforesaid Defendants intentionally, willfully, and/or maliciously acted and/or acted with reckless and/or callous indifference to Plaintiff's foreseeable, clearly established, federally protected rights.

235.  Aforesaid Defendants' animus against Plaintiff Martin's national origin and age played a role in and/or influenced and/or caused Defendants' decisions to refuse him interview and appointment offers.

236.  Aforesaid Defendants' refusals to interview and/or hire Plaintiff Martin proximately caused Plaintiff Martin to suffer damages.

**Count No. 5: Plaintiff Martin's Section 1983 action against Defendants for their retaliatory and chilling acts committed in violation of his 14th Amendment due process rights to freedom of speech and petition.**

237.  Plaintiff Martin sues each of the named Defendants (except Defendant Board) pursuant to Section 1983. Plaintiff Martin repeats, realleges and incorporates by reference paragraphs 1 through 215 above, the same as if more fully set forth herein,

and further avers that the each of such Defendants, in their individual and/or official capacities, committed and/or continue to commit the aforesaid retaliatory and/or chilling acts[209] against Plaintiff Martin violating Plaintiff Martin's rights to speech and petition.

238. The substantial and/or motivating causes for the aforesaid Defendants' aforementioned retaliatory and/or chilling acts were the following:

(i) Plaintiff Martin communicated with and petitioned the EEOC for redress of grievances against him that were known by the Defendants to be subject to public disclosure (through, *e.g.*, the public press, Internet, and other media outlets that would likely result in public criticism of the Defendants, and/or public calls for ouster from their offices) and redress by the EEOC and courts, and

(ii) Plaintiff Martin communicated with and petitioned the Defendants through UGA's Open Records Office to produce copies of records pursuant to the GORA that were known by the Defendants to relate to matters of public concern and were subject to public disclosure; as well as were known by the Defendants to relate to his redress of grievances through the EEOC and courts.

---

[209] *Bennett v. Hendrix*, 423 F. 3d 1247, 1254 (11th Cir. 2005) ("A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights ")

239.   Each of the aforesaid retaliatory and/or chilling actions of the aforesaid Defendants, and other actions yet to be discovered, violated U.S. Const. amend. XIV's Due Process Clause protecting the rights to speech[210] and petition for redress of grievances.[211]

240.   Plaintiff Martin is a U.S. citizen protected by U.S. Const. amend. XIV's Due Process Clause.

241.   Aforesaid Defendants intentionally, willfully, and/or maliciously acted and/or acted with reckless and/or callous indifference to Plaintiff's foreseeable, clearly established, federally protected rights and had no probable cause for their retaliatory and chilling acts.

242.   Said retaliatory and chilling acts proximately caused Plaintiff Martin to suffer damages.

---

[210] *Pickering v. Board of Education*, 391 U.S. 563 (1968) (exercise of right to speak on issues of public importance may not furnish the basis for adverse employment action); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977); *Rutan v. Republican Party*, 497 U.S. 62 (1990) (exercise of right to speak on issues may not furnish the basis for refusal to hire for state employment); *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1288-89 (11th Cir. 2019) ("a citizen's public records requests and lawsuits against the government can clearly constitute protected First Amendment activity" in Section 1983 claim for retaliation against plaintiff's exercise of right to speech).

[211] *Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011); *DeMartini v. Town of Gulf Stream*, 942 F.3d at 1288-89 (11th Cir. 2019) ("a citizen's public records requests and lawsuits against the government can clearly constitute protected First Amendment activity" in Section 1983 claim for retaliation against plaintiff's exercise of right to petition).

## Count No. 6: Title VII action for retaliatory acts.

243.   Plaintiff Martin sues Defendant Board pursuant to Title VII. Plaintiff Martin repeats, realleges and incorporates by reference paragraphs 1 through 215 above, the same as if more fully set forth herein, and further avers that the each of the named Defendants, in their individual and/or official capacities as agents of and/or decision-makers for Defendant Board, repeatedly retaliated and continue to retaliate against him because he filed Charges of employment discrimination in hiring and/or for retaliation with the EEOC against Defendant Board and UGA Law School, and because he participated in the EEOC investigations.

244.   Each of the aforesaid actions of the Defendants, and other actions yet to be discovered, violated Title VII prohibiting retaliation.

245.   Defendants intentionally, willfully, and/or maliciously acted and/or acted with reckless and/or callous indifference to Plaintiff's foreseeable, clearly established, federally protected rights.

246.   Said acts of retaliation proximately caused Plaintiff Martin to suffer damages.

247.   Plaintiff Martin is of Hispanic national origin and is protected by Title VII.

## Count No. 7: ADEA claims for retaliation

248.   Plaintiff Martin sues Defendant Board pursuant to the ADEA. Plaintiff Martin repeats, realleges and incorporates by reference paragraphs 1 through 215 above, the

same as if more fully set forth herein, and further avers that the each of the named Defendants, in their individual and/or official capacities as agents of and/or decision-makers for Defendant Board, repeatedly retaliated against him because he filed Charges of employment discrimination in hiring and/or for retaliation with the EEOC against Defendant Board and UGA Law School, and because he participated in the EEOC investigations.

249.    Each of the aforesaid retaliatory actions of the named Defendants, and other actions yet to be discovered, violated the ADEA prohibiting retaliation.

250.    Defendants intentionally, willfully, and/or maliciously acted and/or acted with reckless and/or callous indifference to Plaintiff's foreseeable, clearly established, federally protected rights.

251.    Plaintiff Martin is a 65-year-old person protected by the ADEA.

## JURY DEMAND

252.    Plaintiff Martin hereby demands a jury trial on all issues so triable as raised in this Complaint.

## RELIEF REQUESTED

253.    WHEREFORE, Plaintiff Martin respectfully requests that this Court:

1. Enter a judgment pursuant to Section 1983, Title VII, and/or the ADEA, declaring that the Defendants violated Plaintiff Martin's rights under federal law by not offering him an interview for and appointment to a law faculty

position on the bases of national origin, age, and national origin plus age as well as by committing retaliatory and chilling acts against him.

2. Provide prospective relief by ordering the Defendants in their official capacities to hire Plaintiff Martin for the position of assistant professor in the Law School with the customary employment terms (including an annual salary for the rank of assistant professor of no less than $193,000.00 per year with annual benefits amounting to 39% of salary) pursuant to Section 1983, Title VII, and/or the ADEA for their ongoing refusal to hire him.

3. Award damages for Plaintiff Martin's loss of back pay and benefits pursuant to Section 1983 holding Defendants (except Defendant Board) in their individual capacities jointly and severally liable for this amount.

4. Award damages for Plaintiff Martin's loss of back pay, front pay, and benefits in the amount of $1,609,620.00, pursuant to Section 1983 holding Defendants (except Defendant Board) in their individual capacities jointly and severally liable for this amount.

5. Award damages for Plaintiff Martin's loss of back pay, front pay, and benefits and/or Defendants' punitive acts against Plaintiff Martin in the amount of $300,000.00 pursuant to Title VII holding Defendant Board liable for this amount.

6. Award punitive damages pursuant to Section 1983 in the amount of $16,096,200.00 holding the Defendants (except Defendant Board) in their individual capacities jointly and severally liable for this amount.

7. Award all costs and reasonable attorney's fees (if Plaintiff Martin should retain an attorney(s) in the future) allowed by law, including 42 U.S.C. § 1988, and those incurred for seeking relief under Title VII and the ADEA.

8. Grant or award any other relief this Court deems just and proper.


Respectfully submitted,


_J. J. Martin_____ Date: 4/6/26

Francisco Forrest Martin, Plaintiff *Pro Se*
5125 Palm Springs Blvd.,
No. 7307
Tampa, FL  33647
Tel: 813-255-7110
Email: ffmartin60@gmail.com

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint with attached exhibits: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my postal and email addresses where case-related papers may be served. I understand that my failure to keep a current postal and email address on file with the Clerk's Office may result in the dismissal of my case.

_F. F. Martin_ _____ Date: _4/6/26_____

Francisco Forrest Martin, Plaintiff *Pro Se*
5125 Palm Springs Blvd., Unit 7307
Tampa, FL  33647
USA
Tel: 813-255-7110
Email: ffmartin60@gmail.com